## CAYCE LAND COMPANY v. GUIGNARD

### (134 S. E., 1)

1. JUDGMENT.—Decree of partition, reserving right of leave to apply for any order necessary to carry it into effect, *held* to apply to administrative orders only, and not to authorize decree confirming title in plaintiff on later supposed acquisition of outstanding interest, but defendant, having due notice of motion therefor, and not resisting it, is concluded by decree.

2. APPEAL AND ERROR.—Where plaintiff, after order refusing his application for writ of assistance, 14 days later gave notice that it would reserve right to appeal, plaintiff is concluded by such order, where notice of appeal and exceptions were confined to later order on second application for the writ.

3. JUDGMENT.—Decree confirming Referee's report, which refused to pass on certain question on ground that Circuit Court in former decree had determined it, *held res adjudicata* on such question.

4. PARTIES.—Where tenant in common was not made party to partition suit, rights of subsequent purchaser of his interest are properly to be determined in separate suit.

5. RAILROADS.—Person having, with consent of railroad, installed spur track as additional servitude on land used as railroad right of way must be held accountable to owners in fee therefor.

6. IMPROVEMENTS.—Person going into possession of land without title is trespasser, and not entitled to compensation for improvements placed thereon.

7. RAILROADS.—License by railroad for spur track to be constructed across its right of way for legitimate railroad purpose *held* not to create additional servitude.

8. RAILROADS.—Occupation of right of way of railroad company by spur track connecting with different railroad, and having no connection with railroad whose right of way it crosses, created additional servitude, and is trespass, for which owner of fee is entitled to account.

9. TRUSTS.—Purchaser under contract of fee defeasible estate and land *held* not trustee for executory devisees and their successors in title as to land which purchaser mistakenly thought was not covered by contract, but was trespasser thereon.

10. JUDGMENT.—Successors in title to executory devisees are concluded by decree specifically requiring purchaser of fee defeasible estate to account for rental value of land.

Before DeVore, J., Lexington, August, 1925. Modified, and affirmed and remanded.

Action in partition by the Cayce Land Company against G. A. Guignard. From a decree entered after hearing of exceptions to the report of the Special Referee, and upon an application for a writ of assistance by the plaintiff, both parties appeal.

Following are the complaint, answer, the first report of the Special Referee, December 6, 1921, the order of Judge Rice, March 4, 1924, the order of Judge DeVore, May 31, 1924, the order of Judge DeVore, July 18, 1924, the second report of the Special Referee, May 19, 1925, the decree of Judge DeVore, August 31, 1925, plaintiff's and defendant's exceptions to Judge DeVore's decree of August 31, 1925, and a reduced reproduction of the Tomlinson plat, all of which were directed to be reported.

## COMPLAINT

The following is the complaint, caption and verification being omitted:

The plaintiff above named, complaining of the defendant, alleges:

(1) That the plaintiff is a corporation duly organized under the laws of the State of South Carolina, and having its principal place of business at Columbia in said State.

(2) That, pursuant to a writ of *fieri facias* issued out of the Court of Common Pleas for Lexington District in the case of A. G. Summer and B. R. Carroll against James Cayce, Isaac Van Sant, Sheriff of Lexington District, levied upon, and on the 4th day of October, 1847, sold and conveyed to John Bryce the following described tract of land, the fee-simple title to which was at said time in the judgment debtor, James Cayce, to wit:

"All that piece, parcel, or tract of land situate, lying, and being in the County of Lexington and the State of South

Carolina, containing 500 acres, more or less, and formerly owned by James Cayce, lying near old Granby, in the said County, on the State road and Congaree river, adjoining lands now or lately occupied by Henry T. Arthur, Rachael Hayne, et al."

(3) That the said deed of Isaac Van Sant, Sheriff, to John Bryce was duly recorded in the office of the Clerk of Court for Lexington District, at pages 332 and 333 of Book P, on the 16th day of November, 1847, and recorded in the office of said Clerk at page 362 of Book SS, on March 1, 1901.

(4) That by a codicil to the last will and testament, which was admitted to probate in the office of the Clerk of Ordinary for Richland District on the 11th day of December, 1855, the said John Bryce devised the said lands as follows:

"The plantation and mill in Lexington District near what was formerly West Granby, formerly the property of James Cayce, but sold by Isaac Van Sant, Sheriff of Lexington District, at the suit of A. G. Summer and B. R. Carroll on the first Monday, 4th of October, 1847, and bought in by me, having also an execution against Cayce for a debt of $1,900.00, which I had to pay as his indorser to the two banks in Columbia, and for which I have paid first and last its full value, for I had to take up a note of $770.00 to P. and R. Bryce besides—this plantation I give, devise and bequeath to my grandson, John Campbell Bryce, and to his heirs, etc.; should he die without issue then to go to his father and to his children precisely as the rest of my estate. Nevertheless it is my wish and desire that Mrs. Cayce be permitted to occupy the house and premises as she has hitherto done since the death of Mr. Cayce, and to plant, if she desires to do so, one-third of the cleared land, and to receive one-fourth of the toll of all the corn ground at the mill as long as she determines to prefer this to a fair equivalent of money for her dower.

"I know my son will at all times be willing to make a fair and liberal arrangement with her, and this is my desire and wish."

That by the will of the said John Bryce, which was admitted to probate in the office of the Court of Ordinary for Richland District, in said State, on the 11th day of December, 1855, the said John Bryce had devised his estate as follows, to wit:

"To my son, Campbell R. Bryce (with the above requisitions and reservations), and to his children, the lawful heirs of his body, I give and bequeath all the rest and residue of my estate, real and personal, of whatever kind I may die seized and possessed of, or that may at any time hereafter, either before or after my death, become mine, to him and to his children forever. And I wish it fully understood and declared, that, having already given him about sixty thousand dollars at various times, and he being worth a property of his own at this present time of fully that amount clear of debt, that, in the event of his dying, leaving a wife, his widow shall not be entitled to any part or portion of my estate which I am now disposing of, but that it shall be the property of all his children, share and share alike, to be enjoyed and managed and controlled by him during his lifetime for his heirs and their use and benefit. And this is not intended to apply to the present wife only who is a most excellent lady and faithful and loving wife and mother, but also to any future wife. And I furthermore intend and desire that, in the event of his outliving his children, and dying childless, without grandchildren, the lawful issue of his loins, then the estate which I now have shall go to the children of my brothers, Peter and Robert Bryce."

(5) That thereafter Elizabeth R. Cayce, widow of James Cayce, in consideration of being permitted by the executors of the late John Bryce, and by his devisee, John Campbell Bryce, to occupy during her life certain portions of land,

and in consideration of the payment to her of $500.00, executed and delivered to said executors, and to said John Campbell Bryce, a certain covenant to hold and release, dated February 27, 1856, and recorded at pages 187 and 188 of Deed Book T, Clerk's office for Lexington District, on March 13, 1856, a copy of which release and covenant is hereto attached marked Exhibit A, and made a part of this complaint.

(6) That the said Elizabeth R. Cayce continued in possession of the said tract of land, holding the same under and by virtue of said release and covenant, until she died during the month of February, 1875, leaving of force her last will and testament, wherein she named her sons, James Cayce and R. W. G. Cayce, executors thereof, and undertook to devise all interest in said tract of land which she then owned to them, which will was duly admitted to probate in the office of the Judge of Probate for Lexington County, and the said R. W. G. Cayce qualified as executor of said will.

(7) That while the said Elizabeth R. Cayce was alive and in possession of the said tract of land, as alleged in paragraph 6 of this complaint, by virtue of the provisions of said will, John Campbell Bryce, above-named, having executed a deed of mortgage of his interest in said tract of land to certain parties, an action for foreclosure was commenced in the Court of Common Pleas for Lexington County against the said John Campbell Bryce and Elizabeth R. Cayce, it being alleged that she had or claimed some interest in the mortgaged premises; and in said cause the said Elizabeth R. Cayce filed her verified answer whereby she admitted that she was in possession of such portion of the said premises as covers the lots of land hereinafter described, and disclaimed that she had or claimed any interest therein save under the will of John Bryce, deceased. That during the pendency of the said action the said Elizabeth R. Cayce died, as alleged in paragraph 6 of this complaint, and, the said R. W. G. Cayce having qualified as executor of her said will, and the said

R. W. G. Cayce and James Cayce having entered into possession of said tract of land under the will of the said Elizabeth R. Cayce, the said R. W. G. Cayce, upon petition, was substituted as executor as a defendant in the place and stead of the said Elizabeth R. Cayce, and adopted her answer in said cause, and the said action resulted in a decree of the Court of Common Pleas for foreclosure of the said mortgage executed by the said John Campbell Bryce on his interest in said tract of land and the sale of the said tract of land pursuant to the provisions of said decree, at which sale the said R. W. G. Cayce and James Cayce became the purchasers thereof, taking title from Charles J. Hendrix, Acting Sheriff for said County, which deed is dated October 6, 1876, and recorded at page 538 of Deed Book LL of deeds in the Clerk's office for Lexington County, and, by virtue of said deed and the will and codicil of John Bryce, continued to hold the said tract of land, the said deed being sufficient to convey the interest of which the said John Bryce was seized, which, by the terms of the will and codicil of John Bryce, was a fee defeasible upon his death without issue living at the time of his death, the said Elizabeth Rea Cayce having continued to hold said tract of land under the covenant alleged in paragraph 5 of this complaint.

(8) That by their deed dated the 22d day of October, 1892, and recorded in the office of the Clerk of Court for Lexington County in Deed Book ——, at page ——, said R. W. G. Cayce and James Cayce conveyed a portion of the tract of land conveyed to him, embracing so much as lies east of the State road and south of the right of way of the Southern Railway, to Wilie Jones, and the said Wilie Jones went into possession thereof, and continued in possession of the same until his conveyance of a part of said land to W. J. Cayce, and thereafter the said W. J. Cayce conveyed to the defendant, G. A. Guignard, one square acre of said land, bounded on the north by the right of way of the Southern Railway, on the west by the State road, south by

lot of land conveyed by Wilie Jones to Mrs. Lizzie G. Cayce: and the said G. A. Guignard entered into possession thereof, and has continued to hold possession thereof under said deed and the will and codicil of John Bryce, above alleged, but has never had the deed recorded.

(9) That the said James Cayce, by his deed dated January 23, 1897, and recorded at page 498 of Deed Book PP in the Clerk's office for Lexington County, conveyed all of his interest in said lands to R. W. G. Cayce, and the said R. W G. Cayce continued in possession of the said tract of land until it was conveyed as hereinafter alleged, holding the same under the terms of the will and codicil of John Bryce, above alleged.

(10) That, while the said R. W. G. Cayce was in possession of the entire tract of land so purchased at the foreclosure sale above alleged, he conveyed to the defendant, G. A. Guignard, so much of the said tract of land as lies north of the right of way of the Southern Railway Company, being bounded on the west by land of Mosely, on the north by other lands of the defendant, G. A. Guignard, on the east by Congaree river, on the south by right of way of the Southern Railway Company; and that said G. A. Guignard entered into possession thereof under said deed and the will and codicil of John Bryce, above alleged, and has continuously remained in possession thereof, but has not recorded the deed so conveying the same to him.

(11) That the said John Campbell Bryce, mentioned in the codicil of the will of John Bryce, died during the year 1915, without ever having been married. That the said John Campbell Bryce had only the following named sisters and no brothers, to wit: Elizabeth Bryce McKinley, Maud Bryce Von Couring, Henrietta Bryce Turnbull, Caledonia Bryce Atkinson, Mary B. Williams, and Margaret C. Simons, all of whom were children of Campbell R. Bryce living at the time of his death, of whom the following, to wit: Elizabeth Bryce McKinley, Maud Bryce Von Couring,

Henrietta Bryce Turnbull, and Caledonia Bryce Atkinson, by their deeds which were duly probated and recorded in the office of the Clerk of Court for Lexington County, conveyed to Hugh Meighan all their right, title and interest under the will of John Bryce, or otherwise, in and to all that 500 acres of land hereinbefore referred to as devised by the said John Bryce, with full covenant of warranty. That A. B. Williams, Sr., Marguerite D. Williams, and A. B. Williams, Jr., as the heirs at law of Mary B. Williams, who died intestate, one of the sisters of the said John Campbell Bryce, by their deed, which was duly probated and recorded in the office of the Clerk of Court for Lexington County, conveyed all their right, title, and interest in the said 500-acre tract of land to the said T. Hugh Meighan, with full covenant of warranty.

(12) That the said T. Hugh Meighan died on the —— day of ——, 19——, and left in full force and virtue his last will and testament, which was duly admitted to probate in the office of the Judge of Probate for Richland County, wherein he devised his interest in the said tract of land to Grace K. Meighan and Mary H. Meighan, the elder. That on the 28th day of July, 1916, Grace K. Meighan, one of the devisees under the will of the said T. Hugh Meighan, and Mary H. Meighan, the younger, and Anne D. Meighan, heirs at law of Mary H. Meighan, the elder, who had died intestate, executed and delivered to the plaintiff herein, the Cayce Land Company, their deed of conveyance which is recorded at page 104 of Deed Book 3-O, Clerk's office for Lexington County, in which the executrices of the will of T. Hugh Meighan, deceased, united, whereby they conveyed to the said plaintiff all their right, title, and interest in the remaining portions of the said 500-acre tract of land, the same covering the lots of land described in paragraphs 8 and 10 of this complaint, and now held by the defendant.

(13) That Campbell R. Bryce, mentioned in the will of the said John Bryce, died prior to the year 1875, and left

30—S. C.—135.

surviving him as his only children his son, John Campbell Bryce, and his daughters above mentioned.

(14) That Grace K. Meighan and Mary D. Meighan, the elder, devisees under the will of T. Hugh Meighan, deceased, became entitled to five-sixths of the said lots of land immediately upon the death of the said John Campbell Bryce by virtue of the devise contained in the will of the said John Bryce, deceased, and the plaintiff is now seized in fee of five-sixths, as tenant in common, of the said lots of land, defendant being supposed to be entitled to the remaining one-sixth, and is entitled to the immediate possession thereof, together with the value of the use and occupation thereof since the death of the said John Campbell Bryce, for which it is entitled to an accounting from said defendant under the covenant of Elizabeth R. Cayce, above alleged.

Wherefore, the plaintiff demands judgment against the defendant (1) for a partition of said lots of land; (2) for the value of the use and occupation thereof since the death of the said John Campbell Bryce, to be accounted for by said defendant; (3) for the costs of this action.

The following are the defendant's fourth and fifth defenses set out in his amended answer:

"For a fourth defense this defendant alleges:

"(1) That on October 22, 1892, R. W. Cayce and James Cayce, who were then in possession of the following described tract of land under a claim of ownership thereof in fee, to wit:

" 'All that piece, parcel, or tract of land situate, lying, and being in the County of Lexington, in the State of South Carolina, containing 500 acres, more or less, and formerly owned by James Cayce, lying near old Granby, in said County, on the State road and Congaree river, adjoining lands now or formerly occupied by Henry T. Arthur, Rachel Hayne and others,' " executed and delivered to Wilie Jones, then cashier of the Carolina National Bank, a deed, which is recorded at page 22, Deed Book LL, Clerk's office for

Lexington County, whereby they conveyed to him, as Trustee, 107 acres of the said 500 acres.

" '(2) That thereupon, to wit, on the 4th day of November, 1892, the said Wilie Jones signed the following declaration of trust, wherein he acknowledged that he held the title to the said tract of land in trust and for the uses and purposes set out in said declaration, to wit:

" 'The State of South Carolina.

" 'Whereas, R. W. Cayce and James Cayce, on the 22d October, 1892, by deed dated on that day conveyed to me in fee "all that parcel of land situate in Lexington County, State of South Carolina, containing 107 acres, more or less, the same being the northern portion of the old Granby plantation, which was conveyed to them by Charles J. Hendrix, Coroner, and Acting Sheriff of Lexington County, by deed dated October 6, 1876, and recorded in the R. M. C. office for Lexington County in Book LL, p. 538, which said parcel of land is bounded as follows: North by C. C. & A. R. R. and lands formerly of Mary Clark, now of the South-Bound road, south by lands of the said R. W. Cayce and James Cayce, east by the Congaree river, and west by land now or formerly of Henry Arthur."

" 'Know all men by these presents that I, Wilie Jones of Columbia, S. C., do hereby declare that I am, and will continue, seized in fee and possessed of said premises in trust to and for the following uses and purposes, that is to say: In trust to hold the same and to receive the rents and profits thereof, and in my discretion to sell the same in whole or in part or in several parts, and, after paying all taxes on said premises and all expenses incurred by me in connection therewith, to apply the net income thereof and the net proceeds of the sale thereof to the payment of all and any indebtedness of John N. Long to "the Carolina National Bank of Columbia," now existing, or hereafter to exist, by bill, note, indorsement, overdraft, or in any way whatsoever, making such application to the several items of such

indebtedness in such order as I may see fit, and, after paying all such indebtedness, then to hold the remaining income of said premises, if any there be, and the residue of said land or of other proceeds of sale thereof, if any there be, in trust for such person or persons as the said John N. Long may by deed or will appoint his, her, or their heirs and assigns, and, in default of such appointment, then in trust for said John. N. Long, his heirs and assigns forever.

" 'In witness whereof I have hereunto set my hand and seal, executing this instrument in duplicate, this 4th November, 1892.

" 'WILIE JONES.

" 'Signed, sealed and delivered in presence of

" 'T. HUGH MEIGHAN.

" 'South Carolina, Richland County.

." 'T. H. Meighan, being duly sworn, says that he saw the within named Wilie Jones sign, seal and as his act and deed deliver the foregoing declaration of trust, and that he with ——— witnessed the execution thereof.

" 'T. HUGH MEIGHAN.

" 'Sworn to before me this 4th November, A. D. 1892.

" 'G. M. WALKER, N. P.'

"(3) That, upon the execution and delivery of said deed to Wilie Jones, and of the said acknowledgment of trust by him, the said Wilie Jones went into possession of the said 107 acres of land, and continued in possession thereof until the same were conveyed away as hereinafter set forth.

"(4) That on the 28th day of February, 1899, the said Wilie Jones executed and delivered to R. G. Ross his deed, which is recorded at page 25 of Deed Book SS, Clerk's office for Lexington County, whereby he conveyed the eastern part of the said 107 acres of land to R. G. Ross, for and in consideration of the sum of $2,500.00.

"(5) That thereafter, to wit, on or about the 18th day of August, 1900, the Carolina National Bank, mentioned in said declaration of trust, commenced its action in the Court

of Common Pleas for Lexington County against Globe
Phosphate Company, Loan & Exchange Bank of South
Carolina, and Wilie Jones for the purpose of foreclosing
as a mortgage the said deed executed by R. W. and James
Cayce to Wilie Jones.  By its complaint the said Carolina
National Bank, the plaintiff in said action, alleged, among
other things, that on October 22, 1892, R. W. Cayce and
James Cayce executed and delivered to the defendant, Wilie
Jones, their deed to 107 acres of land, the same being the
northern portion of the old Granby plantation; and that
thereafter, to wit, on November 4, 1892, the said Wilie-
Jones executed a declaration of trust, dated on that day,
wherein and whereby he declared himself seized and pos-
sessed of said premises in trust to hold the same and to re-
ceive the profits thereof, and, in his discretion, to sell the
same, in whole or in part, and to apply the net proceeds there-
of to the payment of the indebtedness of John N. Long to the
Carolina National Bank.  In its complaint the said bank
further alleged that Wilie Jones had sold to R. G. Ross the
eastern half of said tract and had applied the proceeds of
the sale thereof to the indebtedness of John N. Long to
said bank, and that there then remained in the name of
Wilie Jones, and subject to said declaration  of trust, the
western half of said tract of land, which is described as
follows: 'All that tract of land situate in Lexington county,
S. C., containing 53½ acres, more or less, bounded north
by road bed of the C. C. & A. Railroad Company, east
by the State road, south by land now or formerly of R. W.
and James Cayce, and west by land formerly or now of
Henry Arthur'; and the said plaintiff prayed that said prem-
ises above described be sold under the order of the Court,
and that the proceeds thereof be applied to the payment of
the indebtedness of John N. Long to the Carolina National
Bank.

"(6)  But this defendant alleges that neither James Cayce
nor R. W. Cayce, the grantors named in the deed whereby

the said 107 acres of land and were conveyed to Wilie Jones, were made parties to said action, nor did they appear therein.

"(7) That the defendant in said action, Wilie Jones, the trustee mentioned in said declaration of trust hereinabove referred to, after the commencement of said action, made and entered into an agreement with the Carolina National Bank, the plaintiff therein, whereby said bank agreed that, if the said Wilie Jones would interpose no defense to said action, and would not bid at the sale of said lands, it would bid in said lands and take title thereto in its own name, and hold said title upon the same trusts that were set out in the declaration of trust signed by Wilie Jones and hereinbefore more fully set out.

"(8) That pursuant to said agreement the said Wilie Jones refrained from answering the complaint in said action and refrained from attending and bidding at the sale of the said premises which were sold pursuant to a decree taken in said action on the 24th day of September, 1900, to J. S. Muller, attorney, for $100, although the said lands were worth many times that amount, and this defendant alleges that the said J. S. Muller, attorney, assigned his bid for said premises to the Carolina National Bank, to which H. A. Spann, Clerk of Court for Lexington County, executed and delivered a deed, dated November 14, 1900, and recorded at page 266 of Deed Book PP, Clerk's office for Lexington County, whereby he conveyed said 53½ acres to said Carolina National Bank.

"(9) And this defendant alleges that said bank took title to said premises under said deed and pursuant to said agreement with Wilie Jones, and went into possession thereof as trustee, and held the same subject to the trust set out in the declaration of trust signed by Wilie Jones, and continued in possession thereof as said trustee until it sold the same as hereinbelow stated.

"(10) And this defendant alleges that, while said bank had

title to said 53½ acres in trust as aforesaid, it was offered $7,250 for 29 acres of said 53½ acres by the said Seaboard Line Railway Company, the said offer being made upon the condition that the said bank would procure and convey certain alleged outstanding interests in said lands, the same being the alleged remainder estates mentioned and referred to in the complaint herein as having been purchased by T. H. Meighan, and the defendant herein alleges that the said bank accepted the said offer, and agreed to purchase the said outstanding interests, and have them conveyed to said Seaboard Air Line Railway Company, and this defendant further alleges that, pursuant to its promise, the said Carolina National Bank purchased the interests of the remaindermen under the will of John Bryce, not only in the 29-acre tract, but also in the 500-acre tract, and had title to the same taken in the name of T. H. Meighan.

"(11) And this defendant alleges that the said Carolina National Bank took title to the said interests which it purchased as aforesaid in the name of T. H. Meighan, then cashier of said bank, with the fraudulent purpose and intention of making it appear that said interests had not been purchased by it in its fiduciary capacity, and that the same were not subject to the trust acknowledged by the said Wilie Jones in order to defraud the said R. W. and James Cayce.

"(12) And this defendant alleges that he is advised that, when said bank purchased said interests and remainder estates, and took title thereto in the name of T. H. Meighan, as aforesaid, the purchase thereof inured to the benefit of the trust upon which the said bank held the said land, and the said interests so purchased became part of the said trust estate, and subject to the payment of the indebtedness of John N. Long to the said bank, and to go upon the death of the said John N. Long to his heirs at law, in default of the exercise of the power of appointment vested in the said John N. Long under the said trust instrument signed by

Wilie Jones. And this defendant alleges that the said John
N. Long died intestate, and without ever having exercised
the power of appointment created by the said trust instru-
ment, and left as his only heirs at law the following named
persons, to wit: J. N. Bradley, A. H. Bradley, Jr., M. T.
Bradley, Sr., Louise L. Oliver, Catherine L. Smith, J. W.
Long, Carroll C. Hedger, Helen Long Fix, and Kate
Bradley Rice, and this defendant alleges that the said heirs
at law of John N. Long are now entitled to the estates
purchased by the said T. H. Meighan with the proceeds
of the sale of the estate which the said R. W. and James
Cayce conveyed to the said Wilie Jones.

"(13) And this defendant alleges that on February 15,
1907, by deed recorded at page 427 of Deed Book YY,
Clerk's office for Lexington County, the Carolina National
Bank conveyed the remaining part of said 53½ acres, ex-
cept 10 acres thereof, and another tract which said bank
had purchased at the sale thereof by H. A. Spann, Clerk of
Court, at the foreclosure sale hereinbefore set out, to W. H.
Lyles, for and in consideration of the sum of $8,716.30,
which amount was, pursuant to agreement with John N.
Long, used by said bank in paying off his indebtedness to
said bank, and this defendant alleges that, after all of the
indebtedness of the said John N. Long to the said bank
had been thus paid and discharged, there remained from
the selling price of said lands a surplus, a part of which was
paid by said bank to John N. Long in the execution and de-
livery to T. H. Meighan, for said John N. Long, of a deed
to 10 acres of the said 53½ acres of land, which deed is
dated April 24, 1907, and recorded at page 564 of Deed
Book YY, Clerk's office for Lexington County.

"(14) And this defendant alleges that, after the debts
of John N. Long to said bank had been thus paid and dis-
charged, title to the remainder estates, which said bank had
purchased in the name of T. H. Meighan, while it was
trustee under declaration of trust signed by Wilie Jones,

which had been assumed by said bank, passed to and vested in the above-mentioned heirs at law of John N. Long, who took the same in default of the exercise of the power of appointment contained in the trust instrument executed by Wilie Jones.

"(15) And this defendant alleges that, after the said W. H. Lyles had purchased said lands from the Carolina National Bank, as aforesaid, W. A. Clark, president of the Carolina National Bank, T. H. Meighan, cashier thereof, W. H. Lyles, and T. C. Williams, all of whom had knowledge of the purchase of the remainder estates in the 500-acre tract by the Carolina National Bank, as hereinbefore set out, organized the Cayce Land Company, the plaintiff herein, and became its officers and directors, and took title from said Lyles in the said lands which he had purchased from the Carolina National Bank.

"(16) And this defendant alleges that the said plaintiff, through its officers and stockholders, W. H. Lyles and W. A. Clark, had full knowledge of the manner in which said T. H. Meighan became seized of said remainder estates, and of the fact that the same had been purchased by the Carolina National Bank while it was acting as trustee under the declaration of trust hereinbefore set out, when it purchased said remainder estates from the heirs at law and devisees of T. H. Meighan as alleged in the complaint, and this defendant alleges that the said Cayce Land Company now holds said lands for the benefit of the heirs at law of John N. Long, who are the equitable owners thereof.

"(17) Further answering the complaint herein, this defendant alleges that Wilie Jones, by deed dated February 18, 1893, and recorded at page 64 of Deed Book MM, Clerk's office for Lexington County, sold and conveyed to W. J. Cayce the following described part of said 107 acres of land, to wit:

"'All that tract, piece, or parcel of land situate, lying,

and being in Lexington County, S. C., containing one acre,
and bounded as follows: North by C. C. & A. Railroad Com-
pany, west by Lexington State road, south by line parallel
to said railway, east by line parallel to said road'; and said
W. J. Cayce went into possession of said one acre of land,
and remained in possession thereof until the 12th day of
December, 1895, when, by deed recorded at page 444 of
Deed Book QQ, Clerk's office for Lexington County, he con-
veyed said premises to Lula Cayce; that the said Lula Cayce
went into possession of the said one-acre of land, and
remained in possession thereof until the 2d day of October,
1899, when she, by deed recorded at page 421 of Deed Book
III, Clerk's office for Lexington County, conveyed the same
to this defendant, who is now in possession thereof under
claim of ownership in fee simple based upon said·deed.

"(18) And this defendant alleges that he is now in pos-
session of the tract of land referred to and described in par-
agraph 10 of the complaint herein, which he purchased from
R. W. Cayce under a deed of conveyance, which purported
to convey to him a fee-simple estate in said land, said deed
containing the usual covenants of warranty.

"(19) And this defendant alleges that he is advised that,
inasmuch as Wilie Jones, to whom the 107 acres, of which
the lot described in paragraph 17 hereof is a part, was con-
veyed, while acting as trustee for the benefit of the Carolina
National Bank, sold and conveyed to W. J. Cayce, from
whom this defendant derived title, the tract of land de-
scribed in paragraph 17 hereof, and executed to him a deed
which purported to convey to him a fee-simple thereto, and,
inasmuch as the said bank was the beneficiary of said con-
veyance, the proceeds of the sale of said lot being paid by the
said Wilie Jones to the said bank, and inasmuch as the said
bank assumed·the trust which the said Wilie Jones acknowl-
edged as aforesaid, any purchase of any outstanding interest
in the premises conveyed by James and R. W. Cayce to
Wilie Jones by the said bank inured to the benefit of the

defendant herein, and that the said bank and the Cayce Land Company, the plaintiff in this action, who purchased the remainder estates under the will of John Bryce, are estopped from asserting such estates as against the defendant herein.

"(20) And this defendant further alleges that the heirs at law of John N. Long should be made parties to this action in order that they may assert their claim to said land mentioned in the complaint herein, and in order that a complete determination of the rights of all parties in and to the lands mentioned in the complaint may be had.

"For a fifth defense, further answering the complaint herein, this defendant alleges:

"(1) That, when he purchased the lot of land mentioned and described in paragraph 8 of the complaint herein, this defendant believed that he was purchasing, and that he would receive under his deed, a fee-simple estate in and to the lot conveyed thereby, and this defendant alleges that, upon purchasing the same, and while he believed that he had a good title in fee to the whole thereof, he, at his own expense, erected a substantial building upon a part of the said lot, which building has greatly enhanced the value of the said lot, and this defendant alleges that he is entitled in the partition and division of the said lot, if it should be adjudged that the plaintiff is entitled to a partition thereof, to have that part of said land on which he has erected the said building cut off and assigned to him as his part of the said common property, and that, in the event of the sale of the said premises under a decree of this Court, this defendant is entitled to compensation for the improvements which he has placed upon the said common property."

REPORT OF REFEREE, DECEMBER 6, 1921

The following is the report of the Special Referee:

I, R. E. Carwile, was appointed by order of this Court on the——day of——as Special Referee "to take the testimony to be offered by the parties hereto and determine

all of the equitable issues, both law and facts, raised by the pleadings." I have proceeded with all the speed possible to take the testimony which is herewith reported to the Court. I now submit my findings of fact and conclusions of law bearing upon the equitable issues presented by the pleadings.

I find the following facts:

(1) That on and prior to the 4th day of October, 1847, James Cayce of the district of Lexington was seized in fee of the tract of land hereinafter referred to. That on said day the said tract of land was conveyed by Isaac Van Sant, sheriff of Lexington district, to John Bryce, of the City of Columbia, in said State, by virtue of writ of fi. fa. to him directed. Said tract of land covered both of the parcels now at issue in the present case. Said sheriff's deed was duly recorded in the office of the clerk of Court for Lexington district in Book B, at pages 332 and 333, on the 16th day of November, 1847, and was re-recorded in the office of the said clerk in Book SS, at page 362, on the 1st day of March, 1901.

(2) That by a codicil to his will, duly admitted to probate in the Court of Ordinary for Richland district, S. C., on the 11th day of December, 1855, said John Bryce devised the said land as follows:

"The plantation and mill in Lexington district near what was formerly West Granby, formerly the property of James Cayce, but sold by Isaac Van Sant, sheriff of Lexington district, at the suit of A. C. Summer and B. R. Carroll on the 1st Monday, 4th of October, 1857, and bought in by me, having also an execution against Cayce for a debt of $1,900, which I had to pay as his indorser to the two banks in Columbia, and for which I have paid first and last its full value, for I had to take up a note of $770 to P. and R. Bryce besides——this plantation I give, devise and bequeath to my grandson, John Campbell Bryce, and to him and his heirs, etc., should he die without issue, then to go to his father and to his children precisely as the rest of my estate. Never-

theless it is my wish and desire that Mrs. Cayce be permitted to occupy the house and premises as she has hitherto done since the death of Mr. Cayce, and to plant, if she desires to do so, one-third of the cleared land; and to receive one-fourth of the toll of all the corn ground at the mill as long as she determines to prefer this to fair equivalent of money for her dower.

"I know my son will at all times be willing to make a fair and liberal arrangement with her, and this is my desire and wish."

And by the will itself the said John Bryce disposed of his estate as follows:

"To my son, Campbell R. Bryce (with the above requisitions and reservations), and to his children, the lawful heirs of his body, I give and bequeath all the rest and residue of my estate, real and personal, of whatever kind I may die seized and possessed of, or that may at any time hereafter, either before or after my death, become mine, to him and to his children forever. And I wish it fully understood and declared that, having already given him about sixty thousand dollars at various times, and he being worth a property of his own at this present time of fully that amount clear of debt, that in the event of his dying leaving a wife, his widow shall not be entitled to any part of portion of my estate which I am now disposing of, but that it shall be the property of all his children, share and share alike, to be enjoyed and managed and controlled by him during his lifetime for his heirs and their use and benefit. And this is not intended to apply to the present wife only, who is a most excellent lady and a faithful and loving wife and mother but also to any future wife. And I furthermore intend and desire that, in the event of his outliving his children and dying childless, without grandchildren, the lawful issue of his loins, then the estate which I now have shall go to the children of my brothers, Peter and Robert Bryce."

(3) That thereafter, to wit, on the 7th day of February,

1856, Mrs. Elizabeth Rea Cayce duly executed and delivered
to the executors of the will of John Bryce the following
instrument:

"South Carolina, Richland District.

"Know all men by these presents that I, Elizabeth R.
Cayce, widow of James Cayce, in consideration of being
permitted by the executor of the late John Bryce and by his
devisee, John Campbell Bryce, to occupy during my life the
houses and the yards and gardens thereto attached in the
premises below mentioned, and in consideration of the
privilege of planting during my life 60 acres, of average
quality, of the cleared land upon the said tract, and also of
the sum of $500 to me secured to be paid by Campbell R.
Bryce, executor of the last will and testament of John Bryce,
deceased, have granted, bargained, sold, and released, and by
these presents do grant, bargain, sell, remise, and release,
unto said John Campbell Bryce, the grandson and devisee
of the said John Bryce, all my interest and estate of dower
in and to that tract of land situate in Lexington district in
the State aforesaid whereon I now live, formerly the prop-
erty of my late husband, James Cayce, and purchased at
Sheriff's sale by the late John Bryce, and conveyed to him by
Sheriff Van Sant on the 4th of October, 1847, to wit, a tract
of land containing about 500 acres near old Granby on the
State road, and on the south side of the Congaree river, and
bounded by lands of Henry Arthur, Rachael Hayne, or
Alexander R. Taylor and others now or formerly—to have
and to hold all and singular my right, title, and estate of
dower or of any other kind in and to the said premises to him
the said John Campbell Bryce, his heirs and assigns forever,
and I hereby covenant and agree to and with the said John
Campbell Bryce to hold the said lands for the benefit of
himself and his heirs and assigns during the period of my
life, and subject to my use thereof as herein is first above
recited, releasing my right of dower and any other interest
I may have in said lands and disclaiming to hold the said

lands or any part thereof or any interest therein by adverse possession.

"In testimony whereof I have hereunto set my hand and seal this 27th day of February, Anno Domini Eighteen Hundred and Fifty-six.

"Elizabeth Rea Cayce. [Seal.]

"Signed, sealed, and delivered in the presence of

"Robert Bryce.

"John F. Speck."

Which instrument was duly probated and recorded in the office of the register of mesne conveyances of Lexington district on the 13th day of March, 1856, in Book T, at pages 187 and 188, and was afterwards re-recorded in the office of the clerk of the Court of Common Pleas and general sessions for Lexington County on the 1st day of March, 1901, in Book SS, at page 361.

(4) That at that time John Campbell Bryce, the grandson of John Bryce, was an infant under the age of 21 years, and Mrs. Cayce, by virtue of the instrument, remained in possession of the entire tract of land until her death in 1875 when she died, leaving of force her last will and testament, which was duly admitted to probate in the office of the Court of Probate for Lexington County on the 7th day of August, 1876, by which will she devised as follows:

"Second: Inasmuch as there is now pending in the Courts of this State a question of ownership of a certain tract of land on Congree river, in Lexington County, about one and a half miles below the Columbia Bridge, containing five hundred acres of land, more or less, bounded on the north by Arthur's, south by Taylor's, west by Arthur's land, and east by the Congaree river, it is my will and desire, if the Courts should decide the aforesaid question of ownership in my favor, that the said tract of land be equally divided between my three children, James Cayce, Jane Stingley, widow of the late James Stingley, of the State of Mississippi,

and R. W. G. Cayce, to them and their heirs forever, share and share alike."

And R. W. G. Cayce, son of the said Mrs. Elizabeth Cayce, qualified as executor of the will, receiving letters testamentary on the same day.

(5) That, during the lifetime of the said Mrs. Cayce, John Campbell Bryce, then seized of a life estate in said premises, executed to Hope & Gyles, of the City of Columbia, a mortgage thereof, and afterwards Edward Hope, survivor of the firm of Hope & Gyles, commenced an action of foreclosure in the Court of Common Pleas for Lexington County, and the State aforesaid, against said John Campbell Bryce and Mrs. Cayce, which resulted in a judgment, and is now found as roll 235 in the office of the clerk of Court of Common Pleas for Lexington County. The complaint alleged the execution of the mortgage by John Campbell Bryce, and that the defendant Mrs. Cayce claimed an interest in the premises.

On the 17th day of August, 1876, the Court of Common Pleas passed an order reciting that Mrs. Cayce had departed this life in 1875, leaving of force her last will and testament and that letters testamentary had been issued to R. W. G. Cayce, and directing that the complaint be amended by making him as executor a party defendant.

The defendant Elizabeth Cayce, by Fort, her attorney, answering the complaint herein, denies that James Cayce was the owner of all the land described in the complaint. She also denies that she is in possession of the mortgaged premises described in the complaint without title or color of title, and she alleges that the homestead in which she resides, and several acres of land appurtenant, which are in the said described mortgaged premises, was entailed by deed from William Rea, and was not at any time the property of James Cayce, and the mill and some 18 acres of land appurtenant which is also included in the land described in the complaint, she is informed was not the property of James

Cayce so as to be liable to any execution against James Cayce or any sale under execution against the said James Cayce.

"She is informed that the will of Mr. John Bryce gives her title, and she alleges that she is the widow of James Cayce, and as whose property the land described in the complaint was sold and conveyed in the deed mentioned in the complaint, and that she is entitled to her dower in all that part of the land described in the complaint outside of the mill and 18 acres and the entailed premises.

"Whereupon she demands judgment for her costs and charges in this behalf.

                         "Fort, Atty. for Elizabeth Cayce.

"Personally appeared Elizabeth Cayce, one of the defendants, and made oath that the matters in her foregoing answer are true so far as stated from her own knowledge, and so far as stated from the information of others that she believes them to be true.

                    "[Signed] Elizabeth R. Cayce. [L. S.]
"Sworn to before me April 29, 1872.

                                        "A. R. Taylor,
                         "Trial Justice, Lexington County."

And, after R. W. G. Cayce, as executor, had been substituted as a defendant in the case, and instead of the said Mrs. Elizabeth Cayce, he adopted her answer, and the cause proceeded to judgment, resulting in a decree for the sale of the land.

The said tract of land was thereafter sold by Charles J. Hendrix, acting Sheriff for Lexington County, under said decree, to R. W. G. Cayce and James Cayce, by deed dated the 6th of October, 1876, and recorded in the office of the clerk of Court for Lexington County in Deed Book LL, p. 530, the said R. W. G. Cayce and James Cayce being at the time in possession of said premises under the terms of their mother's will, and they continued to hold possession thereof under said deed and the will and codicil of John Bryce, said deed being sufficient to convey the interest of which the

31—S. C.—135.

said John Campbell Bryce was seized, which by the terms of the will and codicil of John Bryce, was a fee defeasible upon the death of John Campbell Bryce without issue living at the time of his death, the possibility of reverter being devised by the will of the said John Bryce to his son Campbell R. Bryce and his children.

(6) That on October 22, 1892, R. W. G. Cayce and James Cayce, who were then in possession of the said 500-acre tract of land, executed and delivered to Wilie Jones, who was then cashier of the Carolina National Bank, a deed, a copy of which is hereto attached and made a part of this report, whereby they conveyed to him 107 acres of the said 500-acre tract, the said deed being recorded at page 22 of Deed Book LL, clerk's office for Lexington County.

(7) That thereafter, to wit, on the 4th day of November, 1892, the said Wilie Jones signed a certain declaration of trust, wherein he acknowledged that he held the title to the said tract of land in trust, and for the uses and purposes set out in the declaration of trust hereto attached and made a part of this report, and marked Exhibit B.

(8) That upon the execution and delivery of the said deed to Wilie Jones, and of the said acknowledgment of trust by him, the said Wilie Jones went into possession of the said 107 acres of land, and continued in possession thereof until the same were conveyed away and disposed of by him as hereinafter set forth.

(9) That by his deed, dated February 18, 1893, and recorded at page 64 of Deed Book MM, clerk's office for Lexington County, the said Wilie Jones sold and conveyed to W. J. Cayce the following described part of the said 107 acres of land, to wit: "All that tract, piece, or parcel of land situate, lying, and being in Lexington County, S. C., containing one acre and bounded as follows: North by C. C. & A. Railroad Company; west by Lexington State road; south by line parallel to said railway; east by line parallel to said road." The said deed conveys the said tract of land to W.

J. Cayce, his heirs and assigns, and is in the statutory form, except that the warranty clause in said deed is "from and against me and my heirs."

(10) That W. J. Cayce went into possession of the said one acre of land, and continued in possession of the same until the 12th day of December, 1895, when, by deed recorded at page 444 of Deed Book QQ, clerk's office for Lexington County, he conveyed said premises in fee simple to Lula Cayce. That the said Lula Cayce went into possession of the said one acre of land, and remained in possession thereof until the 2nd day of October, 1899, when she, by deed recorded at page 421 of Deed Book III, clerk's office for Lexington County, conveyed the said premises in fee to the defendant G. A. Guignard, who is now in possession thereof under claim of ownership in fee simple based upon said deed.

(11) That on the 28th day of February, 1899, the said Wilie Jones executed and delivered to R. G. Ross his deed, which is recorded at page 25 of Deed Book SS, clerk's office for Lexington County, whereby he conveyed the eastern part of the said 107 acres of land to R. G. Ross in fee for, and in consideration of, the sum of $2,500.

(12) That thereafter, to wit, on the 18th day of October, 1900, the Carolina National Bank, mentioned in said declaration of trust signed by Wilie Jones, commenced its action in the Court of Common Pleas for Lexington County against Globe Phosphate Company, Loan & Exchange Bank of South Carolina, and Wilie Jones, for the purpose of foreclosing as a mortgage the said deed executed by R. W. and James Cayce to Wilie Jones.

By its complaint the Carolina National Bank alleged, among other things, that on October 22, 1892, R. W. and James Cayce executed to Wilie Jones the deed hereinabove set out and referred to in paragraph 6 hereof, and also that the said Wilie Jones executed a declaration of trust, dated November 4, 1892, wherein and whereby he declared him-

self seized and possessed of said premises in trust, to hold the same and to receive the profits thereof, and, in his discretion, to sell the same in whole or in part, and to apply the net proceeds thereof to the indebtedness of John N. Long to the Carolina National Bank. Although the declaration of trust referred to in the complaint is not fully set out therein, and although the same does not appear to have been offered in evidence in said case, I find that the declaration referred to therein is the same declaration of trust as is hereto attached as Exhibit B. For the complaint alleges that Wilie Jones had sold to R. G. Ross the eastern half of said tract, and had applied the proceeds of the sale thereof to the indebtedness of John N. Long to the said bank, and that there remained in the name of Wilie Jones, and subject to the declaration of trust signed by him, the western half of said tract of land, which is described in said complaint as follows:

"All that tract of land situate in Lexington County, S. C., containing 53½ acres, more or less, bounded north by roadbed of the C. C. & A. Railroad Company; east by the State road; south by land now or formerly of R. W. and James Cayce; and west by land fomerly of ———now of Henery Arthur."

(13) That the said Wilie Jones was not made a party defendant to the said suit "as trustee," but he is sued in his individual capacity, and the record shows that he made default in said action, neither answering nor demurring to said complaint.

The decree in said action, which is dated September 24, 1900, adjudges that there was due to the plaintiff bank by the defendant John N. Long the sum of $6,697.61, with interest thereon from the 27th of April, 1900, and directed that the said premises should be sold on sales day in November, unless the said indebtedness should be paid before that time.

(14) That, pursuant to said decree, the said 53½ acres

above described were sold to J. S. Muller, attorney, for $100, and at the said sale three other tracts of land, which were also sold under the said decree as the property of John N. Long, were also bid in by the said J. S. Muller, one of the said tracts being described as follows:

"All that tract of land containing 117¾ acres, more or less, situate in said County and State, and bounded by lands, formerly of James Cayce, now of R. W. Cayce, by lands of John N. Long by lands formerly of Mary Clark, now of South-Bound Railroad Company, by lands of Mrs. Henry Authur, and by tract No. 5 of lands sold in the case of Morgan against Arthur and others, the same being the premises conveyed to John N. Long by Meta H. and T. S. Arthur, by deed dated December 10, 1890, and recorded at page 482 of Deed Book JJ, clerk's office for Lexington County."

Another of the said tracts as follows:

"All that tract of land containing 17¼ acres, more or less, situate in the said County and State, and bounded north by the right of way of the C. C. & A. Railroad Company, east by lands of Mary Clark and lands of the South-Bound Railroad Company, south by lands of John N. Long, and west by lands of John R. Shuler, the same being the premises conveyed to John N. Long by Henry D. Reynolds by deed dated February 7, 1891, and recorded at page 621 of Deed Book JJ, clerk's office for Lexington County."

In addition to the said three tracts, there was another tract of 36½ acres, described as being located on Dry Branch, which was bid in by the said J. S. Muller, attorney. The 53½-acre tract was bid in by J. S. Muller, attorneys, for $100; the others for $135, $300, and $100 respectively.

(15) That the said J. S. Muller, attorney, assigned his bid for the said premises to the Carolina National Bank, to which H. A. Spann, clerk of the Court for Lexington County, executed and delivered a deed, dated November 14, 1900, and recorded at page 266 of Deed Book PP, clerk's

office for Lexington County, whereby he conveyed the said premises, including the said 53½ acres, to the Carolina National Bank. Upon the execution and delivery of the said deed to the said Carolina National Bank, the said bank still recognized the fact that the said property was conveyed to the said Wilie Jones for the purpose of paying John N. Long's indebtedness to the bank, and agreed that any amount derived from the said lands which should remain after the payment of the said debts of John N. Long should go according to the declaration of trust signed by Wilie Jones.

(16) Thereafter, and while the said Carolina National Bank had title to the said 53½ acres of land, it sold and conveyed 29½ acres thereof to the Seaboard Air Line Railway Company for the sum of $7,250, and executed (and delivered) to the said railway company its deed, dated November 10, 1906, and recorded at page 380 of Deed Book YY, clerk's office for Lexington County.

(17) That, prior to the execution of the said deed by the Carolina National Bank to the Seaboard Air Line Railway Company, the said bank promised and agreed to purchase and acquire from the said devisees mentioned in the will of John Bryce their interest in and to the said 29½ acres, and, on the 22d day of April, 1907, the said T. Hugh Meighan, by his deed, which is recorded at page 425 of Deed Book YY, office of the clerk of Court for LexingtonCounty, conveyed the interest which he acquired in the said 29½ acres to the Seaboard Air Line Railway Company, and the said deed contains the following recital:

"Whereas, the Carolina National Bank of Columbia, S. C., a corporation existing under the laws of the United States of America, and having a principal place of business at Columbia, S. C., did during the year 1905 contract or convey to the Seaboard Air Line Railway all that tract or parcel of land hereinafter described, and upon examination of title thereto it was supposed by the attorneys of the Seaboard Air Line Railway that there might be a defect in said title

on account of supposed outstanding claims existing in favor of the children of Campbell R. Bryce.

"Whereas, to remedy the said defect and to make good the title of the Seaboard Air Line Railway to the said tract of land, the undersigned undertook to buy up the supposed title and to convey the same to the Seaboard Air Line so far as the tract of land was concerned."

(18) That by his deed, dated October 22, 1906, and recorded at page 401 in Deed Book YY, clerk's office for Lexington County, Frederick Turnbull, in consideration of $1,500, conveyed to Hugh Meighan all the right, title, and interest which John Campbell Bryce had acquired in the 500-acre tract under the will of John Bryce. This interest, however, had passed to James and R. W. Cayce under the foreclosure proceeding above referred to.

Elizabeth Bryce McKinley, by her deed, dated November 13, 1906, and recorded at page 326 of Deed Book AAA, clerk's office for Lexington County, conveyed to Hugh Meighan, in consideration of $500, all her right, title, and interest under the will of John Bryce to the 500-acre tract of land in question.

That on the 19th day of November, 1906, Maud Von Couring executed and delivered to T. Hugh Meighan her deed, which was recorded at page 328 of Deed Book AAA, clerk's office for Lexington County, whereby, in consideration of $500, she conveyed to T. Hugh Meighan all her right, title and interest under the will of John Bryce in and to the 500-acre tract in question.

That by their deed dated the———day of November, 1906, and recorded at page 428 of Deed Book YY, clerk's office for Lexington County, A. B. Williams, Sr., Margaret D. Williams, and A. B. Williams, Jr., as heirs at law of Mary B. Williams, whereby, in consideration of $500 they conveyed to T. Hugh Meighan all their interest under the will of John Bryce in and to the 500-acres tract in question.

That by her deed, dated October 20, 1906, and recorded

at page 403 of Deed Book YY, clerk's office for Lexington County, Henrietta R. Turnbull, in consideration of $500, conveyed to T. Hugh Meighan all her interest under the will of John Bryce in and to the 500-acre tract in question.

That by her deed, dated the——day of November, 1906, and recorded at page 327 of Deed Book AAA, clerk's office for Lexington County, Caledonia Bryce Atkinson, in consideration of $500, conveyed to T. Hugh Meighan her interest in said tract of land under the will of John Bryce.

The several grantors of the deeds here referred to, except Frederick Turnbull, are the children of Campbell R. Bryce, the son of John Bryce, whose will is the first hereinabove set out, and they, with John Campbell Bryce and Margaret C. Simons, are the only children of John Bryce.

(19) That the said T. Hugh Meighan paid for the interest which he acquired from the several devisees mentioned in said will as follows:

For the interest which he acquired from Henrietta R. Turnbull, he paid by taking up a draft for the sum of $500 drawn on W. H. Lyles on the 7th day of November, 1906.

For the interest which he obtained from Frederick Turnbull, he paid by taking up a draft for $1,500 drawn on W. H. Lyles, and dated November 7, 1906.

For the interest which he obtained from Caledonia Bryce Atkinson he paid by taking up a draft for $500 drawn on T. Hugh Meighan by William N. Atkinson on November 8, 1906.

For the interest which he obtained from Maud Bryce Von Couring, he paid by taking up a draft drawn on T. Hugh Meighan on November 11, 1906.

For the interest which he obtained from Elizabeth Bryce McKinley, he paid by taking up a draft for $500 drawn on T. Hugh Meighan, and dated November 14, 1906.

For the interest which he obtained from A. B. Williams, Sr., Margaret B. Williams, and A. B. Williams, Jr., he paid

by taking up a draft for $500 drawn on T. Hugh Meighan, and dated April 11, 1907.

The above amount which the said T. Hugh Meighan paid for the interest of the said devisees was obtained by him from the funds derived by the Carolina National Bank from the sale of the 29½ acres of land to the Seaboard Air Line Railway for the sum of $7,250.

For it appears from the evidence herein that the deed which the Carolina National Bank executed to the Seaboard Air Line Railroad Company, whereby the said bank conveyed to the said railroad 29½ acres of land, was dated November 10, 1906, and it appears also in the recital in the deed from T. Hugh Meighan to the Seaboard Air Line Railroad Company that the bank had agreed to purchase said interests, and have them conveyed to the said railroad.

(20) That on March 19, 1907, the Secretary of State for the State of South Carolina granted a charter to the Cayce Land Company, which company was incorporated for the purpose of purchasing from the Carolina National Bank and from the said T. Hugh Meighan the land sold by H. A. Spann, clerk of the Court for Lexington County, to the Carolina National Bank. The said corporation was organized with T. C. Williams as president, W. H. Lyles as secretary, the other stockholders of said corporation being T. Hugh Meighan and W. A. Clark; the said W. A. Clark at the time being the president of the Carolina National Bank, and the said T. Hugh Meighan being its cashier.

(21) That on the 15th day of February, 1907, the Carolina National Bank executed and delivered to W. H. Lyles a deed, which is recorded at page 427 of Deed Book YY, clerk's office for Lexington County, whereby the said bank conveyed to the said W. H. Lyles in fee two certain parcels of land, known as tracts B and E on a certain plat made by Avery Carter, and attached to said deed, tract B containing 8.53 acres and tract E containing 88.32 acres. The said two tracts of land are a part of the land conveyed by

H. A. Spann, clerk, to the Carolina National Bank, as heretofore set out.

(22) That thereafter, to wit, on the 18th day of February, 1907, W. H. Lyles executed and delivered to the Cayce Land Company a deed, which is recorded at page 512 of Deed Book YY, clerk's office for Lexington County, whereby he conveyed to the said Cayce Land Company the two tracts of land described in paragraph 21 hereof.

(23) That on the 24th day of April, 1907, the Carolina National Bank conveyed to T. Hugh Meighan 10 acres, which are designated as tract A on the plat of Avery Carter, and which are a part of the 53½ acres of land conveyed by H. A. Spann, clerk of Court to the Carolina National Bank.

(24) That upon the death of the said T. Hugh Meighan there was found inclosed in the said deed, which was in and among the valuable papers of said T. Hugh Meighan at the Carolina National Bank, a paper written and signed by him, wherein he declared he had no interest in the said 10 acres. of land, but that he held the same in trust for John N. Long.

(25) That the heirs at law of John N. Long brought an action in the Court of Common Pleas for Lexington County against the devisees and personal representatives of the said T. Hugh Meighan to have the Court construe the said declaration of trust found among the papers of the said T. Hugh Meighan as giving them an equitable title to the said 10 acres of land. This action terminated in a decree, which was consented to by all the parties, whereby title in said land was vested in W. H. Lyles, his heirs and assigns, for the sum of $1,500.

(26) That some time prior to the purchase of the interest of the devisees of John Bryce by the said T. Hugh Meighan, as hereinabove set out, W. H. Lyles, who was at that time attorney for the Seaboard Air Line Railway Company, W. A. Clark, who was president of the Carolina National Bank, and T. Hugh Meighan, who was its cashier, agreed among

themselves that, if the Seaboard Air Line Railroad Company would purchase 29½ acres of the 53½ acres conveyed to the bank as hereinabove set out, at and for the price of $7,-250, they would purchase from said bank all the rest of the land conveyed to said bank by the said H. A. Spann, as hereinabove set out, provided that the said bank would hold a part of the said $7,250 for reimbursement of the purchaser of the interest of the said Bryce heirs.

(27) That, pursuant to said agreement, the said Carolina National Bank made the conveyance to W. H. Lyles set out in paragraph 21 hereof, and he in turn made the conveyance to the Cayce Land Company.

(28) That the said T. Hugh Meighan died on the——— day of———, 19, and left in full force his last will and testament, which was duly admitted to probate in the office of the Judge of Probate for Richland County, wherein he devised his interest in said tract of land to Grace K. Meighan and Mary H. Meighan, the elder. That on the 28th day of July, 1916, Grace K. Meighan, one of the devisees under the will of said T. Hugh Meighan, and Mary H. Meighan, the younger, and Annie D. Meighan, heirs at law of Mary H. Meighan, the elder, who had died intestate, executed and delivered to the Cayce Land Company, the plaintiff in this action, a deed, which is recorded at page 104 of Deed Book OOO, clerk's office for Lexington County, in which the executrices of the will of T. Hugh Meighan, deceased, united, whereby they conveyed to the said plaintiff all their rights, title, and interest in the remaining portions of the said 500 acres of land, the same covering the lots of land described in paragraphs 8 and 10 of the complaint, and now held by the defendant.

(29) That the said conveyance was without any consideration to support it, and was made pursuant to the agreement made by and between the said Clark, Lyles, and Meighan, referred to in paragraph 26 hereof.

(30) W. H. Lyles knowing of said trust, and being the

secretary of the Cayce Land Company, the company itself must have known of said trust, but it must be borne in mind that the trust was in favor of John N. Long alone.

(31) That all the indebtedness of John N. Long to the Carolina National Bank has been paid and satisfied from funds derived from the sale of the land purchased by the Carolina National Bank from H. A. Spann, as hereinabove set out.

(31½) That by his deed dated July 5, 1897, and recorded at page 172 of Deed Book QQ, clerk's office for Lexington County, R. W. Cayce conveyed to B. B. Cayce in fee simple the following described tract of land:

"All the land I am possessed of extending from the State road to the Rocky Ferry, and land sold by me G. A. Guignard, containing 3½ acres more or less, known as the right of way, on both sides of the Southern Railway; said lands being bounded on the north by lands of John Shuler, south by lands of J. N. Long, east by lands of G. A. Guignard, and Rocky Ferry, and west by the State road."

(32) That the said B. B. Cayce in his lifetime sold the tract of land to the said G. A. Guignard, but no deed thereof was offered in evidence, but it appears that on the 3d day of October, 1906, the Southern Railway, Company commenced its action in the Court of Common Pleas for Lexington County against G. A. Guignard, E. G. Cayce, Alex G. Cayce, G. K. Cayce, for the purpose of obtaining a decree requiring the removal of certain houses off the tract of land described in paragraph 31 hereof; the railroad company alleging that the said houses were built on its right of way. The defendants above named, other than G. A. Guignard, answered the complaint, alleging that they were the heirs at law of B. B. Cayce, who had died intestate, and seized of the land above described. The said action was terminated in a decree, signed July 8, 1907, wherein it was decreed that the heirs at law of the said B. B. Cayce should convey to the said

Southern Railway Company the following described part of the 3½ acres above referred to, to wit:

"All that tract, piece, or parcel of land situate, lying, and being on both sides of the main line of, or track of, the C. C. & A. Railroad, also known as Southern Railway, being 65 feet in width on both sides of said track, and between Congaree river and the public road 477 feet west of the one hundred and tenth mile post on said road."

That pursuant to said decree, E. G. Cayce and Samuel B. George, clerk of the Court, who was acting for the infant children of B. B. Cayce, executed their deed, which is dated April 1, 1907, and recorded at page 442 of Deed Book YY, clerk's office for Lexington County, whereby they conveyed to said railroad company the tract of land described in said decree.

(33) That the said G. A. Guignard is in possession of the remaining portion of said (3½ acres of) land by reason of his purchase thereof from the said B. B. Cayce.

(34) That said John N. Long died intestate on or about the————day of————, leaving as his only heirs at law the following persons: J. N. Bradley, A. H. Bradley, Jr., M. T. Bradley, Sr., Louise L. Oliver, Catherine L. Smith, J. W. Long, Carroll C. Hadger, Helen Long Fix, and Kate Bradley Rice.

That the said John N. Long never exercised the power of appointment vested in him by the declaration of trust signed by Wilie Jones and attached to this report as Exhibit E.

From the foregoing facts I conclude as a matter of law:

First. That Mrs. Elizabeth Rea Cayce, by her deed, for a valuable consideration, having covenanted and agreed with the executors of John Bryce, during the minority of the said John Campbell Bryce, to hold the said tract of land for the benefit of the said John Campbell Bryce, his heirs and assigns, during the period of her life, and subject only to her use thereof as recited in said deed, became

a trustee for the said John Campbell Bryce and for such other parties as might at any time become entitled thereto under the terms of the will and codicil of John Bryce, and her obligation was to protect possession of the said property for the benefit of the parties entitled thereto under the will of John Bryce.

In the widest meaning of the term, "a person in whom some estate, interest or power in, or affecting property of any description, is vested for the benefit of another" is a trustee.   38 Cyc. 2116; 1 Code of Laws of S. C., 1912, § 3673.

Second.    When Mrs. Cayce devised her interest in the property to her sons James Cayce and R. W. G. Cayce, and when they took possession thereof under the terms of the will of the said John Bryce, the obligation of trusteeship, which had rested upon Mrs. Cayce, devolved upon them by operation of law, and they became trustees of John Campbell Bryce and the other remaindermen under the will of John Bryce.

Third.    We may eliminate all that has been said about the trust under deed of Cayce to Jones, because whatever there was of a trust was in favor of John N. Long alone.

Fourth.    That, when R. W. G. Cayce and James Cayce conveyed the square acres of land, one of the parcels in question, to W. J. Cayce, he acquired in fact only a life estate, and his successor in interest, G. A. Guignard, acquired no more, from that source.

Fifth.    I further find that, when G. A. Guignard acquired the tract of land described in paragraph 10 of the complaint, it was only for the life of John Campbell Bryce.

Sixth.    The remaindermen under the will of John Bryce became, upon the death of the life tenant (as John Campbell Bryce proved to be), the owners of said tracts of land.

Seventh.    Five of the six of said remaindermen conveyed, as heretofore set out, their interest to T. Hugh Meighan, and his successor in interest (the Cayce Land Company) is

now the owner of the same. Inasmuch as the plaintiff brings this action for petition, and alleges that the defendant has an interest in the premises described in the complaint, I hold that, in so far as the parties to this action are concerned, title to the other one-sixth is in G. A. Guignard.

Eighth. Improvements have been made upon the one square acre described in paragraph 8 of the complaint upon the belief that the parties making the improvements had good title to the same. The value of such improvements the testimony shows, is $1,250, and I find that G. A. Guignard is entitled to that amount; and, if the improvements or houses on said lot do not cover more than one-sixth of the same, I recommend that such portion be allotted to him, and I recommend the sale of the other lot, and, as the description was very indefinite, I recommend that a survey be made.

Ninth. Plaintiffs ask for an accounting of the rents, but there is no proof that the land had a rental value, except that portion that was improved and hereinabove referred to, and which I have recommended should be set apart to the said G. A. Guignard.

All of which is respectfully submitted.

ORDER OF JUDGE RICE, MARCH 4, 1924.

The above-entitled cause came up before me at my chambers in the city of Edgefield during my sitting as presiding Judge in the Courts of the Eleventh Judicial Circuit. Due notice was given to the counsel representing the defendant, and he indorsed on the proposed order consent that the matter be heard at chambers, and indicated as stated by Mr. Lyles that he did not care to appear in opposition to the motion. The decree of Hon. Ernest Moore, Circuit Judge, in said cause is set out in full in the report of the case as decided by the Supreme Court in 124 S. C., 443; 117 S. E., at pages 644 and 645. The decree of the Supreme Court was a confirmation in full of the decree of Judge Moore, and the quotations are correctly set forth in the petition of the plain-

tiff in the cause.    My conclusion is that the plaintiff is entitled to the relief sought.

It is therefore ordered, adjudged, and decreed, first, that the clerk of the Court of Common Pleas for Lexington County pay over to the plaintiff the sum of $412.62, or whatever the correct amount may be in his hands in said cause, being the balance of the amount paid over to him by the Cayce Land Company upon the purchase of the square acre of land situate in the town of Cayce; second, that the title of the plaintiff to the lot of land on the north side of the right of way of the Southern Railway as shown upon the plat thereof made by the Tomlinson Engineering Company and certified to by R. E. Carwile, Esq., Special Referee in said cause, and hereto attached to be recorded herewith, be and the same is hereby ratified and confirmed, and the defendant G. A. Guignard is hereby adjudged to surrender possession thereof to the plaintiff.

ORDER OF JUDGE DEVORE MAY 31, 1924

The above-entitled cause came up before me at my chambers in the city of Edgefield, S. C., on the twentieth instant on motion of the defendant G. A. Guignard for leave to file a supplemental answer in the cause.    The motion was resisted on the part of the plaintiff, and has been duly considered by me.    The following facts, I think, are undisputed:

John Bryce of the district of Richland, departed this life in 1855, leaving of force his last will and testament, with a codicil thereto, wherby he devised his tract of land in Cayce, in then Lexington district, to his grandson, John Campbell Bryce, in fee defeasible, with a limitation in the case of the death of John Campbell Bryce, without issue living at the time of his death, to Campbell Bryce, son of John Bryce, and father John Campbell Bryce, and to his children.    Campbell R. Bryce died a good many years ago, during the lifetime of his son, John Campbell Bryce, leaving him surviving six daughters and a son, John Campbell Bryce.    John Campbell Bryce died on March 15,

1915, never having married.   During his lifetime five of
his sisters conveyed their interest in remainder to the Cayce
Land Company, plaintiff in this action.   The sixth sister,
Mrs. Margaret C. Simons, had died intestate in 1902, leaving
her surviving her husband, James S. Simons, the elder, and
eleven or twelve children.   The husband and eleven of the
children intervened in an action pending in the Court of
Common Pleas for Lexington County, entitled *"Bradley et
al. v. M]eighan et al.,"* this case reported in 102 S. C., at
page 161; 86 S. E., 378.   They alleged that they were the
only heirs at law of Margaret C. Simons, and consequently
were entitled to her one-sixth interest in the tract of land at
Cayce.   Their right to intervene was contested, but decided
in their favor, after which the twelve parties named as
interveners in that case conveyed their interests to Mr. Wm.
H. Lyles by warranty deed in consideration of the sum of
$2,500, to several small tracts of land, subdivisions of the
500 acres first above mentioned.   Subsequently the same
parties joined with the Cayce Land Company, the undisputed
owner of the other five-sixths interest in the land, in an
action against the Southern Railway Company, which is
reported in 111 S. C., at page 115; 96 S. E., 725, to recover
compensation for a right of way of the Southern Railway
Company across the tract of land in question.   In that case
they alleged that they were the next of kin and heirs at law
of Mrs. Margaret C. Simons.   Compensation was recovered
in that case, and the twelve persons named received the full
one-sixth thereof, their share.   Subsequently, the same parties
united in actions against Mrs. Lula Cayce and against Mrs.
Sarah Mixon, in each of which actions, by compromise, a
portion of the land sought to be recovered was conveyed
to James S. Simons, as trustee for all of the heirs at law
of Mrs. Margaret C. Simons, and the plaintiff in this action
claims that that land still stands in the name of James S.
Simons, trustee, and of George Coffin Taylor, Esq., to whom
a 30 per cent. interest has been conveyed.   Plaintiff also

32—S. C.—135.

claims that the twelve persons named above as entitled to the one-sixth interest of Mrs. Simons have compromised their claims against all parties holding portions of the original tract of land, and in settlement there have been conveyed to James S. Simons, trustee of the heirs at law of Margaret C. Simons, several parcels of the original tract which are still held by him as trustee. These transactions covered all of the land constituting a part of the original 500 acres, except the one square acre of land in the town of Cayce, and a strip of between 3 and 4 acres covering the right of way of the Southern Railway, and a strip lying north of it, which was held at the time of the death of John Campbell Bryce by the defendant G. A. Guignard. Action was brought against him by the Cayce Land Company to have it established that he held the land in question as trustee for all of the remaindermen under the will of John Bryce, the five-sixths interest being undisputed as belonging to the Cayce Land Company, but it being alleged in that action that it was supposed that the defendant G. A. Guignard had acquired the one-sixth interest belonging to the heirs at law of Margaret C. Simons. This action resulted in a final decree filed by Hon. Ernest Moore, presiding Judge of the Eleventh Judicial Circuit, on March 16, 1922. By that decree it was adjudged that the plaintiff was entitled to the five-sixths interest, and that it was supposed that the defendant Guignard was entitled to the other sixth. The decree adjudged the sale of the square acre of land in the town of Cayce, and that the plaintiff should receive five-sixths of the proceeds, and that the clerk of the Court should hold the remaining one-sixth for the defendant Guignard, the decree providing that, if the defendant Guignard had not acquired the one-sixth interest, he should be bound to indemnify the purchaser at such sale from any claim on account of the owners of such undivided one-sixth interest. The decree further provided that the defendant Guignard should make disclosure of all lands held by him having been derived from the Bryce

estate, and that he should account, as trustee, for the rents, issues, and profits therefrom. The defendant Guignard appealed from that decree, and the decree was affirmed by the Supreme Court in all respects. The square acre of land in the town of Cayce was sold and bid in by the Cayce Land Company at $2,500. That company complied with the bid, and received a deed from the clerk of the Court for the lands, paying into clerk's hands·the sum of $416, the one-sixth share of the net proceeds supposed to belong to the defendant Guignard. Subsequently discovering, however, that Guignard had not acquired the one-sixth interest of the heirs of Mrs. Simons, the Cayce Land Company, plaintiff, took a deed from all of the survivors of the twelve persons who were named as interveners in the case of *Bradley v. Meighan,* conveying to it all of their interest in the matters still in dispute between the Cayce Land Company and the defendant Guignard. They supposed that this conveyed to them the entire interest which had passed to Margaret C. Simons. Upon the strength of that deed, they then applied to Hon. Hayne F. Rice, Circuit Judge, presiding in the Courts of the Eleventh Judicial Circuit, after due notice, for an order to the clerk of the Court to pay over to it the ·$416 held as the one-sixth interest of Guignard in the square acre of land, and also adjudging that the defendant Guignard surrender the lands lying north of the right of way of the Southern Railway. That order was dated March 3, 1924.

The proceeding now before me was commenced by a notice that a motion would be made before me at my chambers on Tuesday, May 20, 1924, for leave to file a supplemental answer, setting up that, since the decree and administrative order made in the above-entitled cause, the defendant Guignard had purchased an interest in the one-sixth share of Mrs. Margaret C. Simons in the lands in question from one Tucker, claiming that Tucker was the surviving husband of a daughter of Mrs. Margaret C. Simons. The plaintiff resisted the application, both upon the ground that after

the cause had gone into judgment in 1922 the Court would have no right to grant leave to the defendant to file a supplemental answer, more than two years having elapsed since the entry of the judgment and the appeal therefrom, and upon a denial that said Tucker had any interest in the share of Mrs. Simons, and that, even if he had been the surviving husband of a surviving daughter of Mrs. Simons, he had stood by for ten years, seeing the other heirs at law of Mrs. Simons receive their full share of the lands in question and full compensation for their one-sixth interest conveyed to several parties, and that he would be estopped now to set up any claim, and that the defendant Guignard merely stands in his shoes.

It is not necessary for me to decide these issues. I am, however, of opinion that, even if I had the right to grant the order in question, I should not do so ·under the circumstances. I merely decide that the defendant Guignard has merely succeeded to the rights of W. H. Tucker, whatever they may be, at the time of the delivery of Tucker's deed to him, and that such rights should be established in an independent action to which the defendant Guignard may make all persons parties, as their respective interest may appear. ·

It is therefore ordered that the application for leave to file a supplemental answer be, and the same is hereby, refused.

EXHIBIT K. ORDER OF JUDGE DEVORE, JULY 18, 1924

On June 28, 1924, the plaintiff above named served upon the attorneys for the defendant above named notice of its intention to apply to me, at my chambers, in the city of Edgefield, on the 3rd day of July, 1924, or as soon thereafter as counsel could be heard, for an order requiring the defendant to surrender possession of the lands referred to in the affidavit annexed to the notice. The affidavit referred to is made by William H. Lyles, and states that, notwithstanding the decree of Hon. Ernest Moore in the above-entitled

cause, and the supplemental order made therein by Hon. Hayne F. Rice, presiding Judge, filed in said cause, and of which due notice has been served upon the defendant, the defendant G. A. Guignard refuses to surrender possession of the strip of land shown upon the blueprint attached to the order of Hon. Hayne F. Rice. The motion was also made upon the decree of the Hon. Ernest Moore in the above-entitled cause, upon the supplemental order of Hon. Hayne F. Rice, and upon the affidavit of W. A. Clark used in reply to a motion made by the defendant before me in the above-entitled action.

The said motion not having been called for a hearing on the 3rd day of July, it came on for hearing before me on this, the 15th day of July, 1924, at my chambers in Edgefield. At the hearing the plaintiff was represented by Mr. W. H. Lyles of Lyles & Lyles and the defendant appeared through his attorneys, Messrs, James S. Verner and J. Fraser Lyon. In oppisition to the motion, the defendant filed certain affidavits, to wit, an affidavit of W. H. Tucker, one by James S. Verner, and two by the defendant G. A. Guignard. In opposing the plaintiff's motion, the defendant took the position (1) that, inasmuch as no notice of the filing of Judge Rice's order in the office of the clerk of Court for Lexington County had been served on the defendant, and inasmuch as no verified copy of Judge Rice's order had been served upon the defendant as required by Section 605 of Volume 1 of the Code of 1922, the Court was without jurisdiction to pass the order asked for by the plaintiff; (2) that, inasmuch as the order of Judge Rice was one for the delivery of the possession of real property, it would have to be enforced in the manner prescribed by Sections 605 and 609, Subdivision 4, of Volume 1, Code of 1922; (3) that this Court has no jurisdiction to compel the defendant Guignard to appear in contempt proceedings at chambers, or in any other county than that of his residence, Lexington County, and that therefore the Court had no jurisdiction

in the matter; (4) that, inasmuch as G. A. Guignard was, at the time of the hearing of the said motion, in possession of the premises referred to in the affidavit of W. H. Lyles, and in the notice served on the defendant's attorneys, as a tenant in common with the plaintiff, he could not be dispossessed thereof under such an order as the plaintiff applied for.

After hearing argument of the attorney for the plaintiff and of the attorneys for the defendant, and after considering the affidavits submitted in opposition to the motion, as well as those relied upon by the plaintiff, I am of opinion that the plaintiff is not entitled to the order asked for. This is true because, in the first place, the plaintiff has already obtained an order from Hon. Hayne F. Rice directing the defendant G. A. Guignard to surrender possession of the premises referred to by the plaintiff, and by its motion the plaintiff asks for the relief already granted to it by the order of Judge Rice, whose order may not be changed or modified by me. Nor may I pass an order to enforce obedience to Judge Rice's order by punishing the defendant for disobedience of Judge Rice's order at chambers, nor does it appear that the plaintiff has called upon this Court to punish the defendant as for a contempt of Court on account of his alleged disobedience of the order referred to. The plaintiff only asks for such process as will be necessary to carry the decree of this Court into effect. But for the facts shown at the hearing before me, and hereinafter referred to, an order could be passed to enforce the order of Judge Moore and Judge Rice referred to in the moving papers, but the Court could not enforce obedience to the decrees above referred to by committing the defendant for a contempt of Court. *Murchison v. Miller,* 64 S. C., 425; 42 S. E., 177.

In the second place, as shown by the affidavits of G. A. Guignard used at the hearing before me, and as shown by the affidavit of W. H. Tucker, also used in the hearing before me, and by the deed of W. H. Tucker to G. A. Guignard,

dated April 17, 1924, and exhibited to me at the hearing, it appears that, since the filing of the order of Hon. Hayne F. Rice, and of the decree of Judge Ernest Moore, the defendant Guignard has purchased and acquired an interest in the premises referred to in the moving papers, and now has an estate therein as a tenant in common with the plaintiff, and is in possession of the premises as such tenant in common with the plaintiff. It also appears from said affidavits, deed, and the record herein that W. H. Tucker, under whom the defendant now claims an interest, was not a party to the above-entitled action, nor has his interest in the premises been adjudicated by this Court in any action to which he was a party. That being true and the defendant Guignard having succeeded to his interest, Guignard may not be be dispossessed of the premises under any such order of this Court as the plaintiff has applied for. The defendant, being by reason of his purchase of the interest of W. H. Tucker in the premises a tenant in common with the plaintiff, is entitled to possession of the premises jointly with the plaintiff, and may not be dispossessed under a writ of assistance or such order as the plaintiff has applied for.

This order should not be construed as passing upon the ultimate rights of the parties nor as adjudicating what interest the defendant has in the premises under the deed executed to him by Tucker. The ultimate rights of the parties may be determined in a proper proceeding brought for that purpose. But under the showing made before me I must hold that the defendant Guignard has made out a *prima facie* showing to the effect that he is in possession of the premises referred to as a tenant in common with the plaintiff, and, such being true, he cannot be dispossessed until it is established whether or not he is a tenant in common with the plaintiff and in possession of the premises as such. Moreover, it appears by the affidavit of G. A. Guignard that the plaintiff has gone into possession of, and is in possession of, all of the lands referred to in the order of Hon.

Hayne F. Rice, and shown by the plat of the Tomlinson Engineering Company, except that part thereof upon which the two spur tracks leading to the defendant's brickyard are. It therefore appears that both the plaintiff and the defendant are in possession of the premises referred to, and, as neither has the exclusive right to the possession of any part thereof, if they be tenants in common, neither can dispossess the other in a proceeding of this kind. *James v. Graham,* 114 S. C., 107; 78 S. E., 82.

It is therefore ordered that the plaintiff's motion be, and the same is hereby, refused.

Let the affidavits above referred to, offered, and used at the hearing before me be filed with the clerk of Court together with this order.

### REPORT OF REFEREE, MAY 19, 1925

I, R. E. Carwile, Special Referee, beg leave to make the following report pursuant to the order of Hon. Ernest Moore, dated March 16, 1922, which order is as follows:

"It is therefore ordered that the defendant Guignard do appear before R. E. Carwile, Esq., Special Referee, and make a complete and perfect showing as to what lands are now or have been in his possession which constituted a part of the original Bryce tract of land lying north of the right of way of the Southern Railway Company, and that the said R. E. Carwile, Special Referee, be authorized and directed to have a survey made thereof with a plat thereof, and that the plaintiff have leave to apply at the foot of this decree for further orders with reference to that part of the land.

"It is ordered, adjudged, and decreed that the defendant Guignard do pay the costs of this action, and that he do acccount for the rental value of the said lands occupied by him since the death of the tenant in fee defeasible, John Campbell Bryce, which occurred in the year 1915."

The survey referred to in the first paragraph of the said order was made by L. A. Emerson, of the Tomlinson

Engineering Company, on the 18th of October, 1923, and is filed in the record herein.

I have also taken the testimony offered, and the same is filed herewith.

The sole question then before me is to decide what is "the rental value" of: (a) The square acre of land situated on the south side of the right of way of the Southern Railway Company near where said Railway Company's tract crosses the old State road in the town of Cayce, Lexington County, S. C.; (b) That portion of the tract of land used by the defendant, and delineated on the plat hereinbefore referred to.

I will first consider the rental value of the one square acre. In order that the Court may have a concise statement of the case, it may be well to narrate how the defendant G. A. Guignard came into possession of this square acre, and under what terms he held it.

The former report of the Special Referee, which was in part confirmed by the order of Judge Moore, shows that Wilie Jones purchased said square acre from R. W. Cayce and James Cayce in 1892, and then chain of title is as follows:

(1) Deed of Wilie Jones to W. J. Cayce, dated February 18, 1893, recorded at page 63 of Deed Book MM, clerk's office, Lexington County, S. C.

(2) Deed of W. J. Cayce to Lula Cayce, dated 12th of December, 1895, recorded at page 444 of Deed Book QQ, clerk's office for Lexington County, S. C.

(3) Deed of Lula Cayce to G. A. Guignard, dated October 2, 1899, recorded at page 421 of Deed Book 3-1, clerk's office, Lexington County, S. C.

The decree of Judge Moore decided that, when Wilie Jones took title in 1892, "he went immediately into possession of the land, and took the same subject to the trust under which the said R. W. G. Cayce and James Cayce had held the same, that is to say, for the benefit of the remain-

derman under the will of John Bryce upon determination of the fee defeasible which had been in John Campbell Bryce, and had been purchased by R. W. G. Cayce and James Cayce at the sale in the case of Hope against Bryce and others."

The decree also fixed and established that Wilie Jones, W. J. Cayce, Lula Cayce, and G. A. Guignard, upon their purchases of said premises, took title thereto, and assumed the trusts declared as to the same by Elizabeth R. Cayce by the trust agreement executed by her on the 27th day of February, 1856, which trust agreement is in evidence in the case herein, being Exhibit 4 in the printed "case," and that, among other trusts declared in said instrument, the said Elizabeth R. Cayce covenanted and agreed to and with the said John Campbell Bryce to hold the said lands for the benefit of himself and his heirs and assigns during the period of her natural life, and subject to use thereof as recited in said instrument.

The testimony before me shows that, while W. J. Cayce had title to, or was in possession of, this square acre, he made the following improvements, to wit: A storehouse containing two stories, a dwelling house containing five rooms, and a small two-room frame cabin, and a barn and stable. These buildings were on the premises on the 15th day of March, 1915.

See the testimony of W. J. Cayce under date of August 8, 1924. If these improvements had not been made, the rental value of the premises would not exceed $5 per year. By reason of the improvements so made, I find and hold that the rental value of the premises, which rental is based almost solely upon the permanent improvements so made, to be as follows: Store, $10 per month; five-room house, $8 per month; small frame house, $2 per month—up to the year 1920.

In 1920 rents went up in Cayce to some extent, and I find and report that the rental value was then as follows: Store, $15 per month; house, $5 per month; cottage, $3 per month.

Annexed hereto is the detailed statement showing the several amounts due, less taxes, for the years 1915 to July 1, 1923, with interest thereon to January 1, 1925, which statement shows that the principal amount to $2,406 and the interest to $807.91, total $3,203.91, to which, as stated above, interest should be calculated from January 1, 1925, to date of settlement.

The defendant claims that in this accounting for the rental value of the premises he is entitled to deduct from the amount herein found to be the rental value thereof the value of the improvements which were erected on said premises by said W. J. Cayce at the time of the sale of the said premises under the order of the Court herein, to wit, on sales day in July, 1923, the value of the said improvements to be ascertained by the enhanced value which the said improvements gave to the lot.

The defendant further contends that he is not precluded from setting up this claim at this time by the decree of Judge Moore, wherein he overruled "the referee's conclusion that the defendant Guignard is entitled to compensation for improvements upon the square acre of land at the time of the commencement of this action," because, first, the question now before the Court, namely, Guignard's accountability for the rental value of the said square acre, was not before Judge Moore, and was not passed upon by him or by the referee, and, second, because the case, in so far as an accounting for the rental value of the premises is involved, is now before the Court for the first time.

The contention of the plaintiff, however, is that Judge Moore, in the order and decree above referred to, held that the defendant was not entitled to compensation.

With reference to this contention I shall content myself with saying that I am in doubt as to whether I am authorized to pass upon the question whether or not the defendant is entitled to compensation for these permanent improvements, inasmuch as Judge Moore held that the defendant was not

entitled "to compensation for improvements found upon the square acre at the time of the commencement of this action," etc.

However, in order that the Court may be in full possession of the facts, I find and report that W. J. Cayce, as heretofore stated, made the improvements; that the rental value of the premises as heretofore found is based almost solely upon these improvements; and that practically all of the rents flowed from the improvements themselves; and that without the improvements the rental value would not exceed $5 a year.

I further find and report that the value of these improvements so placed upon said premises by W. J. Cayce were in July, 1923, $2,500, this finding being based largely upon a personal inspection of the property, and upon the testimony of J. C. Heslep, a contractor of high repute. (See his testimony under date of August 12, 1924.)

I further find that these improvements were permanent improvements, and enhanced the value of the premises to that extent.

As to the other lands involved in this accounting, to wit, that delineated upon the plat of the Tomlinson Engineering Company, I find that the defendant Guignard's claim of title and alleged right of possession of the same are based upon the following conveyances: (1) Deed of R. W. Cayce to B. B. Cayce, dated July 5, 1897, recorded at page 172 of Deed Book QQ, clerk's office for Lexington County, said deed conveying "all the land I am now possessed of extending from the State road to Rocky Ferry and lands sold by me to G. A. Guignard, containing 3½ acres, more or less, known as the right of way of the Southern Railway, said lands being bounded on the north by the lands of John Shuler, south by lands of J. N. Long, east by lands of G. A. Guignard and Rocky Ferry, and west by State road." This tract of land B. B. Cayce contracted to sell to G. A. Guignard, but he never executed his deed to the said Guignard for the same. Guig-

nard, however, upon the said B. B. Cayce's agreeing to sell the said strip to him, proceeded to build three small houses on the same, the said houses being situated on the northern side of the Southern Railway's track, and partly on its right of way, as shown by the plat of of the Tomlinson Engineering Company; but, when the Southern Railway Company saw that Guignard was building houses, it instituted its action in the Court of Common Pleas for Lexington County to require him to remove said houses from its right of way. This action, which was commenced on October 3, 1906, was against E. G. Cayce, Alex G. Cayce, and D. K. Cayce, heirs at law of B. B. Cayce, and G. A. Guignard. The decree in that case, dated July 8, 1907, directed E. G. Cayce and Samuel B. George, clerk of Court, to convey to the Southern Railway Company the following described lot: "All that tract, piece and parcel of land .* * * situate and lying on both sides of the main line of the C. C. & A. Railroad, also known as the Southern Railway, being 65 feet in width, on both sides of the track, and between Congaree river and the public road, 477 feet west of the 110 mile post on the said road." Pursuant to said decree E. G. Cayce and Samuel B. George, clerk of Court, by their deed dated April 1, 1907, and recorded at page 442 of Deed Book YY, said clerk's office, conveyed the said premises to the said Southern Railway Company.

Upon the said conveyance being made to the Southern Railway Company, it went into possession of the land described herein, and continued in undisturbed possession thereof until August 15, 1916, when the Cayce Land Company and others commenced their action against the Southern Railway Company (judgment roll 3442) to recover possession of the lands conveyed to the Southern Railway Company by Samuel B. George, clerk, and E. G. Cayce. See page 51 of the reference of July 11, 1924. See, also, *Cayce Land Company v. Southern Railway Co.,* 111 S. C., 115; 96 S. E., 725. This action terminated in a verdict for the

plaintiffs for $636, with interest at 7 per cent. from June 1, 1865, to March 26, 1919. Upon this verdict judgment for $2,558.58 was duly entered, paid, and discharged.

It appears that upon filing of the decree in the case of Southern Railway Company et al., against E. G. Cayce, G. A. Guignard, et al., that said G. A. Guignard abandoned his claim to all of the tract of land which B. B. Cayce had contracted to convey to him, except the four-tenths acre lying on the north side of the right of way of the Southern Railway Company, and delineated on the Tomlinson plat hereinbefore referred to. He, however, remained in possession of this four-tenths acre, and used and occupied the houses built thereon.

Some time after June 10, 1909, the defendant Guignard made a contract with the receiver of the Seaboard Air Line Railway (see page 28 of reference of June 28, 1924, Exhibit A-1), whereby Guignard constructed the line of railroad delineated on the plat attached to said contract as leading from the Seaboard Railway Company main line and crossing under the main line of the Southern Company's track. The track so constructed by Guignard passes under the track of the Southern Railway Company and across its right of way by means of an underpass built by Guignard at his own expense; said underpass being built pursuant to leave granted to him by Southern Railway Company. (See pages 24-33 of the reference of June 8, 1924, and contract between Guignard and the Southern Railway Company offered in evidence as Exhibit A-2, dated September 21, 1909.)

This line of railroad so constructed by Guignard and passing through the underpass shown on the Tomlinson plat, and also crossing the four-tenths acre shown on said plat, cost the said defendant about $330. At the time of the building thereof the defendant Guignard evidently thought that he had the right to build the same across the railroad company's right of way under the license granted to him by the Southern Railway Company, and he also evidently

believed that he had the right to construct the said road across the four-tenths acre under the contract of sale made to him by B. B. Cayce.

The present value of said underpass, as shown by the testimony of L. A. Emerson and G. A. Guignard, is $6,610.

The purpose of the defendant Guignard in building said track and underpass was to obtain a way by which he could carry and haul clay by means of a locomotive and cars from a clay hole on the south side of the track of the Southern and Seaboard Railway Companies to his brickyard on the northern side thereof, and also by which he could carry and ship brick and other freight from his said brickyard to the Seaboard Air Line Railway Company's station at Cayce; said Guignard being engaged in shipping large quantities of brick over said Seaboard Air Line Railway.

The other railroad track leading from the Southern Railway Company's main line northeast across the four-tenths acre was erected by Guignard at his own expense, under license from the Southern Railway Company, in order to have a connecting line with that company, over which company's road he ships and receives large quantities of freight. This track was also erected by Guignard at his own expense, when he evidently thought he had the right to do so under the license granted to him by the Southern Railway Company and under his contract to purchase from B. B. Cayce.

The defendant Guignard has been using the two railroad tracks so erected by him across the four-tenths acre for the transportation of freight to and from his brick yard since the 15th day of March, 1915.

By means of the two tracks built by Guignard under and across the right of way of the Southern Railway Company, the said railway company and the Seaboard Air Line Railway Company are enabled to receive and deliver large shipments of freight to and from the brick plant of the defendant Guignard. It appears to me that the Southern Railway Company had the right to grant to Guignard permission to

build said track across its right of way because such use of its right of way is for railroad purposes.

The only part of the lands delineated on the Tomlinson plat which the defendant Guignard has had possession of and used since the death of John Campbell Bryce are those portions of the four-tenths of an acre lying north of the right of way of the Southern Railway Company, as shown by the Tomlinson plat, and he is liable for the rental value thereof under the order of Judge Moore.

The rental value of the three houses on said strip of land, as shown by the attached tabulation, amounts to $712,-69, which includes interest up to January 1, 1925.

The defendant built these three houses, and I find and report that the value of the two houses remaining as of July 1, 1923, was $300. And I further find and report that the premises would have no rental value without these houses were on the property. But, as heretofore stated, I do not think I have the right to pass upon the question whether the defendant has the right of compensation for these improvements.

The last question to decide is, What is "the rental value" of that portion of the four-tenths acre over which the lines of railway run, which are delineated upon the Tomlinson Engineering Company plat heretofore referred to?

It is the contention of the plaintiff that the defendant Guignard hauled something like 18,321 carloads of brick, coal and clay at a saving of $5 per carload, and that the said defendant is chargeable and responsible for every dollar saved, with interest.

It is the contention of the defendant that he is only chargeable with rent for that portion of the four-tenths acre over which his tracks ran, and not over that portion which ran over the right of way of the Southern Railway, and that the rental value thereof is only nominal.

As to the defendant's contention, it appears to me that it matters little whether the defendant is chargeable with

the rental value of the whole length of said tracks or a portion thereof. The length would have little to do with it, that is to say, whether it was 65 or 130 feet in length.

Nor do I agree with the plaintiff that he is entitled to judgment for every dollar made by the defendant Guignard by reason of the use of the same. These tracks which ran over the plaintiff's land were used in connection with other lines of railway, the one dependent upon the other, and, when separated, the rental value is, of course, much less.

Nor am I of the opinion that "rental value" includes "rents and profits." If the land itself diminished in value or quantity by the use that the defendant Guignard made of it, there might be something in this contention. For instance, if this little strip of land embraced a coal mine, clay pit, or rock quarry, such a contention might be well founded; but such is not the case. The placing of the tracks and the underpass on this strip of land has not diminished its value or lessened its quantity, nor do I think that it has enhanced its value to any great extent.

The rental value of this strip of land must be established by proof of what the premises would rent for or from evidence of other facts from which a fair rental may be determined.

I am of the opinion that $50 a year is a reasonable rental of those portions so used by the defendant for his railway tracks, and annexed hereto is a statement showing that upon that basis the rental value amounted to $565.32, which includes interest up to January 1, 1925.

I base this finding largely upon the proceedings referred to on pages 48 to 60 of the reference under date of July 11, 1924, and the testimony of witnesses in reference thereto.

As stated hereinbefore, I do not think that the underpass of the lines of railway could be considered in the nature of permanent improvements, or that they could be said to have enhanced the value of the said strip of land.

All of which is respectfully admitted.

33—S. C.—135.

ORDER OF JUDGE DEVORE, AUGUST 31, 1925

Upon the hearing of the excetpions to the Special Referee's report on the accounting ordered by Judge Moore, and of the hearing of the plaintiff's second application for a writ of assistance, Judge DeVore filed the following order:

This is an application made to me by the plaintiff for a writ of assistance to put the defendant out of possession and the plaintiff in possession of a certain strip of land delineated on a plat made by the Tomlinson Engineering Company pursuant to an order made in this action on October 18, 1923. This plat discloses a strip 65 feet in width lying on both sides of the Southern Railway's main track between the Congaree river and the old State road, which strip is the right of way of the Southern Railway Company, and is occupied by it as such. The plat also discloses a narrow strip of land about 900 feet long and 25 feet wide at its widest point, and lying just north of the right of way. The plat also shows that the Southern Railway's right of way and the four-tenths of an acre at a point where it is only about 3 or 4 feet wide is crossed by a railroad track shown on said plat as "Guignard's R. R.," the crossing being effected by means of an underpass. The plat also shows a railroad track leading from the north side of the Southern Railroad's track across the four-tenths of an acre. This piece of track is designated on said plat as "Guignard's siding connecting with Southern Railway."

The first track—that delineated on said plat as Guignard's R. R.," and crossing the Southern Railroad by means of the underpass shown on said plat—was built by the defendant Guignard under a contract made by and between him and the receivers of the Seaboard Air Line Railway on June 10, 1909 (Exhibit A-1), as shown in second printed case for appeal, pages 32–40, by which the said Guignard agreed and constructed a side track at Cayce, S. C., "being a spur or connecting track extending from the siding of the Seaboard

Air Line Railway's main line at Cayce, S. C., on the west side thereof, and running northwardly and westwardly crossing under the tracks of the Southern Railway, and connecting with Guignard's Brick Works track," all as indicated and shown in red on a blueprint attached to said contract, and by which the defendant Guignard agreed that he would, upon the completion of said track, deliver the same to the said receivers, who should thereafter operate said track under the terms of said contract.

By the terms of said contract the defendant herein granted to the said receivers as a right of way for said spur track, a strip of land 30 feet in width, being 15 feet on each side of the center of, and parallel to, said track for and during such time as the said receivers might desire to maintain and use said track. By said contract the defendant Guignard granted to said receivers the right at all times to enter upon said strip for the purpose of operating, repairing, or maintaining the same, and covenanted that, in the event that said railroad track should be located on lands of another party than the defendant, he would procure and assign to the said receivers license and consent from the owners to such use and occupation thereof.

By said contract the entire cost of construction of said track was to be borne by the defendant in this action, G. A. Guignard. But at the beginning of the operation of said track the said receivers were to refund 25 per cent. of the revenue (except switching charges) derived by the receivers from shipments made by or to the defendant Guignard from or to his industries on said side track by way of lands controlled by the receivers until $5,000 of the amount spent by the defendant Guignard should have been refunded to him.

By said contract the defendant Guignard guaranteed that the business delivered by him or other industries located, or to be located, on said spur track to the lines operated by said receivers should not be less than $5,000 per annum, and that,

in the event said revenues should be less than that amount per annum, then the defendant Guignard would pay to said receivers 6 per cent. of the amount which should have been refunded to him by the receivers.

By said contract the defendant further agreed to ship and receive over lines controlled by the receivers all goods delivered by him or received by him, from points reached by the receivers' lines, provided equal rates and facilities should be offered by the receivers.

By said contract the said Guignard agreed that he would, with power to be furnished by him, do all necessary switching over said track in handling business to and from his plant at said point.

By said contract said Guignard agreed that, in the event he should care to be relieved from the obligations of said contract, and in the event that said receivers should care to continue to use the same, they might do so by paying him 6 per cent. of the fair valuation of said land as a fair annual rental thereof.

By said contract it was agreed that the term thereof should be binding upon the successors of said receivers, the Seaboard Air Line Railroad.

The underpass delineated on said plat as crossing under the Southern Railroad track was built by Guignard pursuant to said contract between him and the receivers aforesaid, and under a contract between him and the Southern Railroad, which contract is in evidence in this case as Exhibit A-2.

The other railroad, to wit, that leading from the north side of the Southern Railroad across the four-tenths of an acre, was built by Guignard for the purposes of receiving from, and delivering freight to said company under license granted to him by it and is used for that purpose.

As shown by the evidence in this case and by the returns to a similar application made to me by the plaintiff herein on July 18, 1924, the defendant has turned over to the plaintiff herein all the lands delineated on said Tomlinson plat,

except the spur tracks above referred to, and the plaintiff is now in possession thereof.

In addition to the use made by the Seaboard Air Line of the track passing under the Southern Railroad, as indicated in said contract between him and the receivers above mentioned, the same is also used by the defendant Guignard, under license granted him by the Seaboard Air Line in transporting clay from a clay pit on the south side of the Seaboard Air Line tracks to his brickyard on the north for the purpose of being manufactured into brick, a large portion of which are then shipped over said Seaboard Air Line Railroad.

The question, then, is whether or not the plaintiff is entitled to a writ of assistance, or similar order, to dispossess the defendant of the two tracts of land occupied by the two railroad tracks delineated on said plat, to wit, that shown as "Guignard R. R.," and "Guignard siding connecting with Southern Railway," and to put plaintiff in possession thereof.

The defendant resists the granting of the writ upon three grounds, to wit:

First. That an application was heretofore made to me for a similar writ, and upon the hearing thereof it was refused by my order dated 18th day of July, 1924, and that, therefore, I am without jurisdiction to grant this order.

Second. That under the evidence in this case this particular portion of property is in possession of and being used by Southern and Seaboard Air Line Railway for railway purposes, and possession of the same cannot be taken or interfered with, and the use made by defendant of said strips of land is under license from said railroads.

Third. That, after the decrees of Judge Moore and Rice in this case, the defendant acquired an outstanding interest in the lands in question from one of the remaindermen under John Bryce's will, he being a beneficiary of the trust referred

to by Judge Moore, and is now a tenant in common with plaintiff under said purchase, and is in possession as such.

It appears from the return by way of affidavit filed herein, and the exhibits thereto, and by reference to the records and evidence taken in this case, and the records of the suit now pending in the Court of Common Pleas for Lexington County, entitled G. A. Guignard, plaintiff against E. J. Corley et al., Defendants:

(1) That at the time the decree was made in this case by Judge Ernest Moore, March 16, 1922, he was under the impression that five-sixths interest in the land in controversy belonged to the plaintiff, Cayce Land Company, and that one-sixth thereof belonged to the defendant G. A. Guignard. Subsequent thereto it developed that the defendant Guignard did not own the one-sixth interest, and the plaintiff herein undertook to buy up this interest, purchasing it from a number of different parties, who undertook to convey their several interests, but their deed does not purport to cover and embrace the entire one-sixth, but only such interest as they respectively had.

(2) After having purchased these various interests, the plaintiff applied to the Court, and Judge Rice, by his order in the cause, directed that certain funds which had been realized from the sale of the square acre mentioned in the complaint, and which had been set aside for the one-sixth interest, should be paid over to the plaintiff, and also that the title of said plaintiff to the four-tenths of an acre on the north of the right of way of the Suthern Railway Cmpany, as evidenced by its deed, and as certified to by the Special Referee, should be ratified and confirmed, and the defendant Guignard was adjudged to surrender possession thereof to the plaintiff. This four-tenths of an acre was land which the defendant Guignard was required to and did discover and disclose pursuant to the order of Judge Moore.

(3) Subsequent to this order, the defendant Guignard, claiming that the plaintiff had not purchased the entire out-

standing one-sixth interest, undertook to, and did, obtain a deed of conveyance for a smaller fractional part thereof, which deed was exhibited to the Court in this case.

(4) After having obtained this interest, the defendant applied to the Court for leave to file a supplemental plea, and by order of May 31, 1924, I refused to allow him to file such plea, stating, however, "I merely decide that the defendant Guignard has merely succeeded to the rights of W. H. Tucker (his grantor), whatever they may be, at the time of the delivery of Tucker's deed to him, and that such rights should be established in an independent action to which the defendant Guignard may make all persons parties as their respective interests may appear."

Upon appeal to the Supreme Court by Guignard my order was confirmed, the Court saying in its decision filed April 1, 1925   (131 S. C., 296; 127 S. E., 364), among other things: "No supplemental answer can be filed in this case because the complaint has passed into judgment by the decrees of Judges Moore and Rice.  If, after the decree was filed, and it later was made to appear that one interested was not a party to the suit, and had an interest in the land, and Guignard purchased that interest, while we affirm Judge DeVore's order refusing to allow Guignard to file a supplemental answer, that is without prejudice to Guignard bringing a new and separate suit to litigate any rights that he may have acquired in the property subsequent to that time."

(5) It appears from the records in the Court of Common Pleas for Lexington County, presented to me in this case, that Mr. Guignard commenced an action and filed his original summons and complaint on the 28th of February, 1925, for the purpose of setting up the interest acquired by him under conveyance from Mr. Tucker in and to various tracts or parcels of land and against various defendants, claiming under and as a part of the Bryce or Cayce tract of 500 acres in and about the town of Cayce.  The

original action was not commenced against Cayce Land Company probably for the reason that at that time the Supreme Court had not passed on the appeal from the application to file the supplemental answer.

Later, the Cayce Land Company made application to the Court to be allowed to be made a party, and was made a party defendant, and an amended summons and complaint were issued therein on the 15th of May, 1925, and served on Cayce Land Company on that day, as appears by acceptance of service by Messrs. Lyles & Lyles, their attorneys. The amended complaint clearly and specifically embraces the particular portions of land as to which this writ of assistance is asked, and it sets up the title derived by Guignard from Tucker and asks for partition.

(6) That the plaintiff herein takes the position that the defendant Guignard stood in the position of a trustee, and that, being in that position, he had no right to acquire an outstanding interest, and if he did acquire such interest, it inured to the benefit of the cestui que trustent, meaning thereby the plaintiff as assignee or grantee of the interest of the other tenants in common. I do not concur in this position for the following reasons:

(a) The decree of Judge Moore under which this trust relation is claimed shows that the trust relation arose out of the fact that Guignard acquired and held his right prior to that decree to the property in question indirectly through and under Mrs. Elizabeth Rea Cayce, and that he was bound by her trust agreement, and under that trust agreement she was a life tenant and a trustee "to protect the remaindermen against any adverse claim."

The next sentence of Judge Moore's order is as follows: "They were, therefore, not in position to assert a claim within themselves based upon improvements made to the property."

(b) The authorities cited by Mr. Lyles apply to and enforce the principle that a trustee cannot take advantage of

his trust, and cannot buy an outstanding, adverse interest
to his trust, and use it to destroy the trust. The cases go
so far, and no farther.

In the citation from *Tisdale v. Tisdale,* 2 Sneed. (Tenn.),
596; 64 Am. Dec., 777, the Court says: "These relations of
trust and confidence bind all to put forth their best exertions,
and to embrace every opportunity to protect and secure the
common interest."

The author of Cyc., at the citation made, is speaking of
the purchase of an adverse interest. And so with reference
to 26 R. C. L.

But the same author, and indeed all authors on the subject,
recognize the right to purchase the interest of a cestui que
trust. 39 Cyc., 300; 26 R. C. L., 1330; §§ 193, 194.
*Huguenin v. Adams,* 110 S. C., 412; 96 S. E., 918. *McCants
v. Bee,* 1 McCord. Eq. (S. C.), 389; 16 Am. Dec., 610.

All the authorities hold that the cestui que trust from
whom such purchase is made would have a right to inquire
into the bona fides and fairness of the purchase, and that
the purchase may, under some circumstances, be voidable
at the election of the cestui que trust (from whom the pur-
chase was made), but this is a matter for the cestui que trust,
and even the cestui que trust, in order to avoid it, must dis-
affirm; must show that he was overreached; and must return
the consideration.

There is no claim in this case that any advantage has been
taken by Mr. Guignard in purchasing the interest of Tuck-
er, and Tucker himself has not, directly or indirectly, made
any objection. We can see no right of the plaintiff, as
assignee and successor of the rights of the other cotenants,
to object to the purchase of such interest. Clearly the plain-
tiff does not claim this interest, and it would certainly be
inequitable that the plaintiff should derive a benefit or profit
from an interest for which it had paid nothing.

(c) I am further of opinion that the trust declared by
Judge Moore was, as he stated, to protect the remaindermen

against adverse claims of title or right of possession. And,
if Mr. Guignard bought up the interest of Tucker, which
has not been heretofore represented or protected by the
plaintiff, he was more clearly protecting the interest
of the cestui que trust than the plaintiff, who seems to have
been claiming the entire one-sixth interest, if there is a real
interest owned by Mr. Tucker, now by the defendant as
his assignee. The Court does not now pass upon the question
of whether or not Tucker owned an interest, as that is a
question to be litigated and determined in the other action
now pending.

(d) Further, the Court is of opinion that, at the time the
decree of Judge Moore was made, and at least after that
of Judge Rice, the duties, except for an accounting, and the
trust relationship were at an end, and Mr. Guignard had the
same right as any other person to purchase an outstanding
interest. Indeed, his purchase of the Tucker interest was
in discharge of his duty as trustee in protecting it.

(e) It seems also clear from the former order made by
me and by the decision of the Supreme Court on the last
appeal, where this same trust position was urged, that the
Court thought Mr. Guignard had succeeded to the rights
of Mr. Tucker, and had the same rights as Mr. Tucker to
set up his purchase of such outstanding interest, if any.

(7) The position taken by defendant that the previous
order in this case refusing the writ of possession or writ of
assistance is binding and precludes the Court from now
acting upon it is, we think, sound. The plaintiff was entitled
to appeal from the order made by me refusing the writ of
assistance or writ of possession in my order of July 18, 1924,
and this is the only way in which to review that order.
*Lipman v. Perry,* 129 S. C., 88; 123 S. E., 772.

The plaintiff seems to have filed exceptions to that order,
but it does not appear whether or not an appeal has been
prosecuted. If it has not been prosecuted, or is not pro-
secuted in the manner provided by law, such order would

stand as a binding judgment in this case on that point. *Yancey Bros. v. So. Wholesale Lbr. Co.,* 129 S. C., 51; 123 S. E., 767 (1). *Colman v. Rush,* 123 S. C., 236; 116 S. E., 449. *Woodmen v. Means,* 87 S. C., 133; 69 S. E., 85.

Under the Lipman Case cited above, and the cases of *Gray v. Lbr. Co.,* 100 S. C., 89; 84 S. E., 410. *Middleton v. Ice & Fuel Co.,* 97 S. C., 459; 81 S. E., 157; and *Beckwith v. Martin,* 98 S. C., 184, 185; 82 S. E., 414, the Court is without jurisdiction to make any other order in this case upon this application for a writ of possession or writ of assistance.

(8) The next position taken by defendant is that the writ cannot be granted because the particular portion as to which it is desired to apply it is in the possession and use of Seaboard Air Line Railway and Southern Railway, in connection with the operation of said railroads as common carriers and public utilities, and is being used and operated by defendant Guignard under license and agreement with said railroads, and that the Court cannot interfere with such possession and use.

(a) The evidence in the case shows, and the referee found (pages 8–10 of his report and evidence there referred to), that, by means of these tracks built by Guignard crossing at a narrow point the strip of four-tenths of an acre, the Southern and the Seaboard Air Line Railways are enabled to receive and deliver, and are receiving and delivering annually, large shipments of freight to and from the brick plant of the defendant Guignard, and this constitutes the basis of one of the exceptions by plaintiff.

(b) These tracks are to be, and may be, used not only by the defendant Guignard for receiving and delivering freight, but by any other person, company, or business designated by the railroads.

(9) The Court is of opinion that these tracks are being used for proper and legitimate railroad purposes under license and leave of Seaboard Air Line Railway and South-

ern Railway. *Shelton v. Sou. Cotton Oil Co.,* 106 S. C.,
192; 90 S. E., 751. See also *Hartford Fire Ins. Co. v.
Chicago, et., R. R. Co.,* 175 U. S., 99; 20 S. Ct., 33; 44
L. Ed., 84. *Gurney v. Elevator Co.,* 63 Minn., 70; 65 N. W.,
136; 30 L. R. A., 536, 537. *Anderson v. Interstate Mfg.
Co.,* 152 Iowa, 455; 132 N. W., 812; 36 L. R. A.(N. S.),
512, etc., and note and cases at pages 512-520.

We think the Court in the Shelton Case has manifested
a purpose to construe railroad purposes in a fair and
equitable sense so as to embrace those things which
reasonably facilitate the business of the railroad. Indeed,
in the charter of Columbia & Hamburg Railroad Co.,
which is referred to by counsel for plaintiff in his excep-
tions, passed in 1863 (13 Stat., pp. 204, 205, § 17), it is
provided that the company may purchase and hold lands for
the purpose of erecting "depositories, storehouses, houses
for officers * * * or for effecting transportation thereon"

To put plaintiff in possession of these portions of railroad
tracks would be to dispossess the railroads themselves. In
view of the use being made of these tracks, I think the plain-
tiff's remedy, if any, must be by an action for damages or
compensation against the railroad company, or against
the railroad company and Mr. Guignard, and not by a writ
of assistance or writ of dispossession. *Cayce Land Co. v.
Southern Railway,* 111 S. C., 123, 124; 96 S. E., 725.

For the reasons stated hereinabove, it is ordered that the
application for the writ of assistance be, and same is hereby,
denied.

June ——, 1925.

At the hearing of the case before me at Edgefield I was
strongly inclined to grant the writ, and would have done so
had it been incumbent upon me to decide the question at
that time, but after a more thorough investigation, I am
satisfied that it would be wrong to oust one tenant in common
and put another in possession; that is, exclusive possession.
And again the record shows that W. H. Tucker, the party

from whom Guignard claims, was not a party to any action or proceeding had at the time of the orders of Judges Moore and Rice in the case, and hence could not be bound by them. After those orders Guignard bought, Tucker's interest. Therefore, if Tucker was a tenant in common, Guignard is.

For the reason stated hereinabove, it is ordered that the application for the writ of assistance be, and the same is hereby refused.

As to the exceptions to the Special Referee's report, I have not been able to find any good reason why the report of the Special Referee should be disturbed. The testimony is quite conflicting on all the matters involved in the exceptions.

It is therefore ordered that the exceptions both by plaintiff's and by defendant's attorneys are hereby overruled, and the said report be, and the same is, made the judgment of this Court. I have been asked by letter only to fix the fee of the Special Referee in this case. I do not know if I could do so under the circumstances in this case. I will, however, from the amount of work he did as is shown by the records, all of which it took me a great while to examine. I think a fee of $300 would be about right.

PLAINTIFF'S EXCEPTIONS TO JUDGE DEVORE'S ORDER OF
AUGUST 31, 1925

From Judge De Vore's decree, the plaintiff appealed in due time on the following exceptions:

. You will please take notice that the plaintiff excepts from the order of Hon. J. W. DeVore, Circuit Judge, refusing plaintiff's application for a writ of assistance in said cause, and also confirming the Special Referee's report on the accounting of the defendant Guignard, whereby the referee refused to charge the defendant Guignard with the rental value of the two private railroad tracks operated by him and crossing the strip of land in question, upon the following grounds:

(1) Because by the decree of Hon. Ernest Moore, supple-

mented by the order of Hon. Hayne F. Rice, Circuit Judge, filed in said cause, it having been finally and conclusively decided that the defendant was in possession of all of the strip of land in question as trustee for the plaintiff, and having been ordered and adjudged to surrender the possession thereof to the plaintiff, it was error for his Honor, Judge DeVore, to consider the claim of the defendant that he was in possession of the two railroad tracks under the contracts made by him with the Seaboard Air Line Railway and Southern Railway in 1909.

(2) Because it was error for his Honor, Judge DeVore, to hold that the Seaboard Air Line Railway could by any contract with the defendant Guignard grant to him a right and easement over the lands in question then held by him as trustee for the remaindermen under the will of John Bryce, deceased.

(3) Because it was error for his Honor, Judge DeVore, to hold that, by the contract in question between the receivers of the Seaboard Air Line Railway and the defendant Guignard, the receivers intended to grant to him any right of way over the lands in question.

(4) Because it was error for his Honor, Judge DeVore, to hold that the Southern Railway Company, successor of the Columbia & Hamburg Railroad Company, and as such the holder of an easement only for the operation of its own over the land in question, could grant to the defendant Guignard any right to operate his private railroad over the land in question.

(5) Because it was error for His Honor, Judge DeVore, to hold that the contract in question between the defendant Guignard and the Southern Railway Company contemplated that the Southern Railway Company would convey to the defendant Guignard any right to lay his private railroad over the strip of land in question, except so far as its own exercise of its franchise and right of way was concerned.

(6) Because it was error for his Honor, Judge DeVore,

to hold that it was competent for either of the said railroad companies to grant to the defendant Guignard the right to use either of said tracks for his private purposes in hauling clay from his clay pit south of the Seaboard Air Line Railway to his brickyard one-half mile or more north of the Southern Railway.

(7) Because his Honor should have held that the decree of Judge Moore, supplemented by the order of Judge Rice, which had become final and conclusive by the lapse of one year from the filing and from the notice of the filing thereof without any appeal there from, or any motion for relief therefrom on the ground of mistake or excusable neglect, had finally and conclusively established that the defendant held all of the land in question in trust for the plaintiff, subject only to the easement of the Southern Railway Company for the operation of its line across the same, and should have adjudged that the plaintiff was entitled to the aid of the Court to put it in possession thereof.

(8) Because his Honor held that the plaintiff was estopped from now demanding the aid of the Court to put it in possession of said lands by the order passed by him in July, 1924, when he should have held that by said order it was expressly ruled that "(copy)" and he should have held that by its terms the said order was temporary in its effect; that it was made at a time when the defendant still had the right to appeal from the order of Judge Rice, and still had the right to relief therefrom, if the said order had been granted under the mistake that the plaintiff had acquired all of the rights of the heirs of Mrs. Simons, for at that time no notice of the filing of said order had been given, and twelve months had not elapsed from the passage thereof, but a formal notice of said filing has since been granted, and more than twelve months have elapsed, not only from the filing of said order, but from the giving of the notice of the filing thereof, and the defendant has taken steps for relief from said

order or to assert by a separate action any right that he may have acquired under the deed from Tucker.

(9) Because his Honor should have held that, by the action brought by the defendant against E. J. Corley et al., to which the plaintiff was made a party defendant at its own request, the defendant in this action did not by the one hundred and twentieth paragraph of his complaint in that action, or any other part of said complaint, assert in issuable form any right to the railroad tracks in question or any part of said strip of land, but only asserted that he was in possession thereof without asking for any determination of his rights thereto.

(10) Because it was error for his Honor to refuse to modify the report of the Special Referee refusing to grant to the plaintiff the rental value for the use of said two private railroad tracks where they crossed the strip of four-tenths of an acre, lying north of the right of way of the Southern Railway, and were shown and found by the referee to have been used for the private purposes of the defendant at a great saving to him, and should have referred the case back to the referee to ascertain and report the value to the defendant Guignard of the use of said tracks over and across the said four-tenths of an acre.

(11) Because his Honor should have held that under the decree of Judge Moore, as supplemented by the order of Judge Rice, the underpass built by the defendant Guignard for the use of his private railroad under the track of the Southern Railway passed to the cestui que trust, and was so adjudged by said decree and order upon the death of John Campbell Bryce on the 15th of March, 1915, and should have ordered the case back to the referee to ascertain and report the value of the use and occupation of said underpass and private railroad track across the right of way of the Southern Railway to the defendant Guignard, since the death of John Campbell Bryce.

DEFENDANT'S EXCEPTIONS TO JUDGE DEVORE'S ORDER OF
AUGUST 31, 1925

The defendant also served the following exceptions:

(1) The defendant excepts to the decree and order of
Hon. J. W. DeVore, and urges that he erred in not hold-
ing that, in the accounting for the rental value of the one
square acre which the defendant had occupied from the time
of the death of the life tenant in 1915 to the sale thereof
in 1923, the defendant should be held accountable only for
the rental value of the lot in its unimproved condition.

(2) Because Judge DeVore erred in not holding that,
if the defendant is chargeable with the rental value of the
one square acre with the improvements thereon, he should
be allowed to deduct from the amount found due on said ac-
counting the permanently increased value which the improve-
ments placed on the land by the defendant's grantor had
added to the same.

(3) Because Judge DeVore erred in not finding that in
the acounting for the rental value of the one square acre
ordered by Judge Moore he was not bound by Judge Moore's
decree, wherein it was held: "I also overrule the referee's
conclusion that the defendant Guignard is entitled to com-
pensation for improvements found upon the square acre of
land at the time of the commencement of this action. It does
not appear by whom the improvements were put upon the
property, nor does it appear how much these improvements
add to the present value of the property," because the record
shows that the issues made before Judge Moore were not the
same as those made before Judge DeVore, and because the
record also shows that, when the matter was before Judge
Moore, there was no proof in the case that the land had a
rental value, and no proof as to who made the improvements,
or under what circumstances they were made, whereas, when
the cause was before Judge DeVore on the accounting there
was before the Court evidence showing that the improvements

on the premises had been made by W. J. Cayce, defendant's predecessor in title, at a time when he believed his title to be good, and also showing what the rental value of the premises was without the improvements.

(4) Because Judge DeVore erred in not holding that, since the record in the case presented, on the question of the defendant's liability for the rental value of the premises, a different state of facts from those presented at the hearing before Judge Moore, the right of the defendant to have set off as against his liability for the rental value of the one square acre the permanent value added to the premises by the permanent improvements placed thereon by the defendant's grantor had not been adjudicated against the defendant.

(5) Because Judge DeVore erred in not holding that in the accounting for the rental value of the strip of land lying north of the right of way of the Southern Railway Company's track, and revealed by the defendant Guignard on the discovery ordered by Judge Moore, the defendant should be accountable only for the rental value of the same in its unimproved condition.

(6) Because Judge DeVore erred in not holding that, if the defendant is chargeable with the rental value of the strip disclosed by him on the discovery ordered by Judge Moore in its improved condition, he should be allowed to deduct from the amount due therefor the permanently increased value which such improvements added to the same.

(7) Because Judge DeVore erred in not finding that in the accounting for the rental value of the lands disclosed by the defendant under the discovery ordered by Judge Moore, he (Judge DeVore) was not bound by Judge Moore's decree wherein he held that the defendant was not entitled to compensation for such improvements, since the question whether the defendant had made any improvements on said strip was not raised or passed upon by Judge Moore, nor had the existence of the said strip been revealed when the cause was before Judge Moore.

(8) Because Judge DeVore erred in not finding that in the accounting ordered by Judge Moore the defendant is entitled to set off as against his liability for the rental value of the premises occupied by him the value of the underpass built by the defendant Guignard, the said underpass being a permanent improvement, and erected by the defendant Guignard when he believed that he had a bona fide right to do so under leave granted to him by the Southern Railway Company and B. B. Cayce.

(9) Because Judge DeVore erred in not finding that in the accounting ordered by Judge Moore the defendant is entitled to set off as against his liability for the rental value of the entire premises occupied by him the value of the spur track leading from the Southern Railway Company's main line across the four-tenths acre delineated on the Tomlinson plat, since the evidence shows that the same was built by the defendant Guignard when he thought that he had a right to do so under license granted him by the Southern Railway Company and under his contract of purchase with B. B. Cayce, and because Judge DeVore also erred in not holding in this connection that the defendant is entitled to offset against his liability for the rental value of the premises occupied by him the value of the cost of building the said spur track, the sum of $300, said sum being the present value of the said track.

(10) Because Judge DeVore erred in not holding that, inasmuch as the permanent improvements placed upon the premises occupied by the defendant after the death of the life tenant by W. J. Cayce, the defendant's grantor, and by the defendant himself, exceeded in value the rental value of the premises as found by Judge DeVore, the defendant should not be held liable to the plaintiff in any amount by reason of his use and occupation of the premises in question.

(11) The referee having found that the spur track connecting with the Southern Railway and the underpass under said railway was built by defendant Guignard under license

and contract with the Southern Railway and with the Seaboard Air Line Railway, for the purpose of receiving, and had been for years and was being used to receive and ship, large quantities of freight over the said railway lines, and the said referee having found that the Southern Railway Company had a right to grant permission to build said tracks for such use, and that such use was for railroad purposes, and such finding having been affirmed by Circuit Judge De Vore, he should have found ·and held that plaintiff could not claim or recover any compensation or rental for the use of such tracks or spurs by the defendant.

(12) That Judge DeVore should have found that the plaintiff having heretofore received compensation from the Southern Railway Company in an action against said Company contained in judgment roll 3442, from the Court of Common Pleas for Lexington County, which was in evidence in this case, for the use of the right of way covering and embracing the point where the said spur tracks cross and connect, and did cross and connect at the time of said action, with said railway, said plaintiff could not in this action receive any other or further compensation for the use of such spur. tracks.

*Messrs. Lyles & Lyles* for plaintiff-appellant, and respondent cite: *Former appeals:* 131 S. C., 296; 127 S. E., 364; 124 S. C., 443; 117 S. E., 644. *Writ of assistance allowable where plaintiff entitled to possession of land:* 64 S. C., 428. *Adjudications made in former trial and not appealed from conclusive:* 63 S. C., 419; 16 S. C., 585; 23 Cyc., 1215; 34 C. J., 868. *Use of railroad rights of way for railroad purposes only:* 106 S. C., 192; 60 S. C., 389. *Purchase of lands for railroad purposes authorized:* 13 Stats., 175. Railroad *company only had easement in land in dispute:* 111 S. C., 115; 72 S. C., 228; 63 S. C., 269; 60 S. C., 381. *Tenant for life becomes trustee for remaindermen on termination of life estate:* 2 Hill Ch., 393. *Trustee cannot purchase for*

*himself from cestui:* 81 S. C., 511; 38 S. C., 454; McM. Eq., 341; 1 Madd. Ch., 111; 26 R. C. L., 1388; 39 Cyc., 296 and 469; 70 Am. Dec., 549; 12 Am Dec., 414. *Review of intermediate order affecting judgment:* Code Civ. Pro., 1922, Sec. 26 and 642. *Trustee not allowed to profit from trust:* 2 McC. Eq., 214; 16 Am. Dec., 648; 39 Cyc., 296. *"Rental value" of real estate defined:* 41 Minn., 131; 42 N. W., 788; 59 Iowa, 572; 13 N. W., 714; 115 N. W., 1013.

*Messrs. James S. Verner, D. W. Robinson and J. Fraser Lyon* for defendant-respondent, and appellant cite: *Use of underpass on Southern Railway right of way was for railroad purpose:* 106 S. C., 195, 90 S. E., 752; 143 N. W., 852; 132 N. W., 812; 36 L. R. A., (N. S. ), 513; 30 L. R. A., 536; 180 U. S., 452; 45 L. Ed., 619; 175 U. S., 99; 44 L. Ed., 84; 139 U. S., 128; 35 L. Ed., 75; 155 F., 498; 142 N. Y., 180; 126 N. W., 789; 109 N. W., 672; 79 N. W., 635. *Case distinguished:* 60 S. C., 386. *Plaintiff's only remedy for use of railroad's right of way is action for compensation:* 111 S. C., 123; 96 S. E., 725. *Construction of industrial spur tracks authorized:* Civ. Code, 1922, Sec. 4977. *Res adjudicata:* 128 S. C., 402; 122 S. E., 498; 123 S. C., 239; 116 S. E., 449; 118 S. C., 478; 111 S. E., 15; 263 U. S., 71; 68 L. Ed., 168. *Order not appealed from binding in subsequent proceedings:* 129 S. C., 51; 123 S. E., 676; 122 S. E., 490. *Previous adjudication may be affected by change of circumstances:* 129 S. C., 539; 123 S. C., 236; 120 S. C., 45; 112 S. E., 539; 118 S. C., 470. *Previous order changeable only when circumstances change:* 130 S. C., 518; 126 S. E., 646; 129 S. C., 88; 123 S. E., 772; 100 S. C., 89; 98 S. C., 184. *Writ of assistance will not issue against tenant in common:* 14 S. C., 307. *Writ of assistance ineffective against party not named in it:* 114 S. C., 111; 78 S. E., 82. *Right of appeal lost by delay:* Code Civ Pro., 1922, Sec. 640; 129 S. C., 51; 123 S. E., 676; 122 S. E., 490; 121 S. C., 377; 113 S. E., 438. *"Rental value" and "rents and prof-*

*its" distinguished:* 38 S. C., 454; 17 S. E., 48; 15 S. C., 367; 14 S. C., 307. *Cotenant in possession chargeable with rents and profits received:* 109 S. C., 457; 96 S. E., 157; 38 S. C., 454; 17 S. E., 48; 15 S. C., 367; 14 S. C., 307. *Trespasser, or tenant in common who ousts his cotenant, chargeable with rental value:* 38 S. C., 454; 17 S. E., 48; 26 S. C., 502; 2 S. E., 493; 14 S. C., 307. *Trustee using land to his own advantage chargeable with reasonable rental value:* 81 S. C., 511; 62 S. E., 847. *Party in possession not liable for rents and profits due to his improvements:* 26 S. C., 503; 2 S. E., 493; 15 S. C., 367. *Right of cotenant in possession to offset against account for rents the value of permnaent improvements by him:* 117 S. C., 415; 115 S. C., 96; 109 S. C., 457; 53 S. C., 353; 28 S. C., 564; 26 S. C., 39. *Same where improvements made by one through whom cotenant in possession claims:* 128 S. C., 31; 121 S. E., 674; 117 S. C., 409; 81 S. C., 286. *Justice of each case to determine right of cotenant to offset permanent improvements against claim for rents and profits:* 17 S. C., 54. *When allowance of compensation for improvements by life tenant improper:* 115 S. C., 35. *Spur track in question serve proper railroad purposes:* 106 S. C., 192; 90 S. E., 751; 15 S. C., 69; 175 U. S., 99; 44 L. Ed., 84; 36 L. R. A. (N. S.), 512; 30 L. R. A. (N. S.), 536.

May 17, 1926.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Cross-appeals from an order or decree of his Honor, Judge DeVore, dated August 31, 1925, entered after the hearing of exceptions to the report of the Special Referee, R. E. Carwile, Esq., and upon an application for a writ of assistance by the plaintiff. This is the third appeal in the case. The other appeals resulted in judgments of this Court, reported in 124 S. C., 443; 117 S. E., 644, and 131 S. C., 296; 127 S. E., 364.

The action was commenced at a time not stated in the record, but before December 6, 1921, the date of the Special Referee's report; quoting the language of the "Case for Appeal":

"In its complaint the plaintiff alleged that it and the defendant were tenants in common of the lands mentioned and described in the complaint, and demanded judgment against the defendant (1) for a partition of the lots of land; (2) for the value of the use and occupation thereof since the death of John Campbell Bryce, to be accounted for by said defendant; and (3) for the costs of the action."

The defendant denied the right of the plaintiff to partition, upon grounds overruled in the former judgment of this Court, adverted to in the opinion reported in 124 S. C., at page 455 (117 S. E., 644), and set up the defense that he had purchased the property in good faith, believing that he was acquiring a good title thereto; had erected valuable improvements thereon; and that, in the event that partition be ordered, that portion of the lots upon which improvements had been placed be assigned to him, or, in the event of sale, he be allowed compensation for them.

The case involves the rights of the parties in connection with three distinct portions of a large tract of land, which formerly belonged to one John Bryce, just across the Congaree river from the city of Columbia, in Lexington County, in and around what is now known as the town of Cayce, containing 500 acres: (1) A lot in the town of Cayce, containing one square acre, hereinafter referred to as the "acre lot"; (2) a strip of land 3½ acres, constituting the right of way of the Southern Railway Company, 65 feet wide on each side of the center of the main line, and extending from the State Highway on the west to the Congaree river on the east, hereinafter referred to as the "right of way"; and (3) a small segment of land between the north line of the right of way as the "arc," and the property line of the Moseley estate and

of the defendant Guignard as the "chord," about 900 feet long and about 30 feet wide at the widest point, containing four-tenths of an acre, herinafter referred to as the "segment."

Both the facts and the proceedings in this case are complicated to a degree, and it appears necessary that a detailed and doubtless tedious recital of them shall precede a discussion of the legal issues between the parties.

The 500 acres, as stated, formerly belonged to John Bryce. He died in 1855, leaving a will, which has been construed by this Court, in former proceedings, as creating in John Campbell Bryce, a son of Campbell R. Bryce, and a grandson of the testator, John Bryce, a fee defeasible, with a limitation over upon the death of John Campbell. Bryce, without issue (children), to his six sisters, as executory devisees. John Campbell Bryce, the tenant in fee defeasible, died March 15, 1915, never having married, and at his death the executory devises took effect in his six sisters. See 124 S. C., at page 451 (117 S. E., 644). At some time not appearing in the record, but evidently prior to 1876, John Campbell Bryce had mortgaged his interest in the land.

It is not clearly developed, but it appears that prior to 1876, some arrangement had been made between John Campbell Bryce and Elizabeth R. Cayce (who she was does not appear), by which the property was conveyed to Elizabeth ·R. Cayce, in trust for John Campbell Bryce and the executory devisees upon the termination of his fee defeasible.

About the year 1876 the mortgage which had been given by John Campbell Bryce was foreclosed in the case of *Hope v. Bryce* et al. (we assume that Hope was the mortgagee or the assignee of the mortgage), and at the sale at that time R. G. W. Cayce and James Cayce, who were then the executors of the will of Elizabeth R. Cayce, became the purchasers of the property, and, as decided by the decree of his Honor, Judge Moore, in this case, dated March 16, 1922, they assumed and continued in possession as trustees under

the terms of the trust deed from John Campbell Bryce to Elizabeth R. Cayce.

The defendant's (Guignard's) title to the "acre lot," acquired October 2, 1899, comes by successive conveyances from R. W. G. Cayce and James Cayce, as explained in the opinion of Mr. Justice Marion, in 124 S. C., at page 453 (117 S. E., 644), and in the report of the Special Referee, dated May 19, 1925, and he became trustee for the executory devisees upon the termination of the fee defeasible in John Campbell Bryce at his death on March 15, 1915, as Elizabeth R. Cayce and R. G. W. and James Cayce had been. The defendant, Guignard, held possession of the "acre lot" from the date of his conveyance October 2, 1899, until the termination of the fee defeasible on March 15, 1925 and continued thereafter to hold possession, and was in possession at the time of the commencement of this action.

In 1906 or 1907, as explained in the opinion of Mr. Justice Marion, in 124 S. C., at page 454 (117 S. E., 644), the plaintiff, Cayce Land Company, acquired the interest of five of the six executory devisees, daughters of Campbell R. Bryce and sisters of John Campbell Bryce, in the entire 500 acres. The interest of one of them, Margaret C. Simons, was not then acquired. So much for the condition of the title to the "acre lot."

Next, as to the "right of way": At some time before the termination of the fee defeasible, the predecessor of the Southern Railway Company acquired from the parties who were then holding under the title of John Campbell Bryce, as tenant of the fee defeasible, a right of way as described above over a part of the 500 acres.

On July 5, 1897, R. W. Cayce (we assume R. W. G. Cayce), who apparently had acquired the interest of James Cayce, conveyed to B. B. Cayce a strip of land containing 3½ acres more or less, extending from the State road to the Congaree river, "known as the right of way of the South-

ern Railway," bounded on the north by lands of John Shuler, on the south by lands of J. N. Long, and on the east by lands of G. A. Guignard and Rocky Ferry.

B. B. Cayce contracted to sell this land to Guignard, but never executed a deed therefor. Guignard, however, went into possession of it, except, of course, the roadbed and, as he states, 10 feet on each side of the track, and built three small houses upon it. The railway company then brought an action against Guignard and the heirs of B. B. Cayce to establish its right of way. The action resulted in a decree requiring a conveyance by the defendants to the railway company of a strip 65 feet on each side of the track between the Congaree river and the State road. The railway company continued in undisturbed possession of its right of way so established until August 15, 1916, when the Cayce Land Company and the heirs of Margaret Simons, whose interest it had not acquired, brought an action against the Southern Railway Company to recover possession of the land covered by the deed executed in compliance with the decree in the case of Southern Railway Company against Guignard and the heirs of B. B. Cayce, evidently upon the theory that whatever rights the railway company had were derived from the fee defeasible estate in John Campbell Bryce, which had terminated in 1915, vesting the title in the executory devisees. This suit resulted in a judgment in favor of the plaintiffs for $2,558.58, compensation for the right of way, which was paid by the Southern Railway Company. The effect of this litigation was to establish the fee to the land covered by the right of way in the Cayce Land Company, which owned the interests of five out of six of the executory devisees, children of Campbell R. Bryce, and in the heirs of Margaret Simons, the sixth of the executory devisees; the easement of right of way in the railway company.

On June 10, 1909, Guignard entered into a contract with the receivers of the Seaboard Air Line Railway Company whereby under certain conditions, a spur track was con-

structed by him leading from the Seaboard's track (south of the Southern's track), crossing the right of way of the Southern, across the strip of four-tenths of an acre, the "segment," and proceeding on, over lands of Guignard, to his brickyard on the north side of the Southern. The spur track crossed the track of the Southern by an underpass, constructed by license of the Southern. The purpose of Guignard in constructing, maintaining, and operating this spur track and underpass was to obtain a way by which he could haul by rail clay from a clay pit on the south side of both railroad tracks to his brickyard on the north side, and also by which he could haul brick and other freight from his brickyard to the Seaboard's station at Cayce. The cost to Guignard for such construction was $330. The present value of it was shown to be $6,610.

On September 21, 1909, Guignard entered into a contract with the Southern Railway Company, whereby, under certain conditions, a spur track was constructed by him leading from the track of the Southern, partly over its right of way, across the "segment," and proceeding on, over lands of Guignard, to his brickyard on the north side of the Southern. It crossed the right of way at grade, and at the north line of the right of way, as shown on the Tomlinson plat, about 400 feet from the underpass where the other spur track crossed. It was constructed by Guignard at his own expense, under the license agreement with the Southern Railway Company, in order to have a connecting line with the Southern Railway Company, over whose lines he ships and receives large quantities of freight. So much for the condition of the title to the "right of way."

Next, as to the strip of four-tenths of an acre lying between the north line of the Southern Railway Company's right of way and the property line of the Moseley estate and of the defendant, Guignard, the "segment":

It appears that R. W. G. Cayce claimed title, from the fee defeasible estate in John Campbell Bryce, to the fee in

the land occupied by the right of way of the Southern Railway, and, as stated above, on July 5, 1897, he conveyed the fee in this tract, containing 3½ acres, to B. B. Cayce. The latter contracted to sell it to Guignard, but no deed was ever executed. Guignard, supposing that the 3½ acres extended north as far as the lines of the Moseley estate and his own, went into possession of the entire tract, except, of course, the roadbed of the railway company. It developed that the railway company's right of way extended 65 feet on the north, which left the strip under consideration, containing four-tenths of an acre. The referee finds:

"It appears that, upon the filing of the decree in the case of Southern Railway Company and others against E. G. Cayce, G. A. Guignard et al., that said G. A. Guignard abandoned his claim to all of the tract of land which B. B. Cayce had contracted to convey to him, except the four-tenths acre lying on the north side of the right of way of the Southern Railway Company, and delineated on the Tomlinson plat hereinbefore referred to. He, however, remained in possession of this four-tenths acre, and used and occupied the houses built thereon * * * The only part of the lands delineated on the Tomlinson plat which the defendant Guignard has had possession of since the death of John Campbell Bryce are those portions of the four-tenths of an acre lying north of the right of way of the Southern Railway Company, as shown by the Tomlinson plat, and he is liable for the rental value thereof under the order of Judge Moore."

The case was referred to R. E. Carwile, Esq., as Special Referee, who filed a report dated December 6, 1921, in which he held that the plaintiff was entitled to partition. As to the "acre lot," he held that improvements of the value of $1,250 had been placed upon the lot, and that the defendant was entitled to that amount (in the event of a sale, it is assumed), and that, if the improvements did not cover more than one-sixth of the lot (that being as was then supposed,

the interest of the defendant as a tenant-in-common), such portion be allotted to him. As to the "segment," he recommended a sale of it, but that, as the description of it was very indefinite, a survey be made. As to the demand of the plaintiff for an accounting of the rents, he held:

"There is no proof that the land had a rental value, except that portion that was improved (the 'acre lot,' interpolated), which I have recommended be set apart to the said G. A. Guignard."

The Special Referee's report is not set forth in the record, and there are doubtless other findings than these, taken from excerpts set forth, which we assume are not considered material to the issues now involved.

The matter then came on to be heard by his Honor, Judge Moore, in February, 1922, upon exceptions to the report. On March 16, 1922, he filed a decree, in which he decided:

(1) That Guignard was not entitled to compensation for improvements found upon the "acre lot" at the time of the commencement of the action, for the reason stated by him that it did not appear by whom the improvements were put upon the property "nor does it appear how much those improvements add to the present value of the property." In addition, the learned Judge remarked:

"It is clear, however, that the possession of the property was held by Mrs. Elizabeth Rea Cayce, under the terms of her trust agreement, until her death in 1875; that her executors then succeeded to the possession, and then while so in possession, themselves purchased the fee defeasible of John Campbell Bryce at the judicial sale in the case of *Hope v. Bryce.* They conveyed directly to Wilie Jones, who knew of the trust. Wilie Jones conveyed to W. J. Cayce; and he conveyed to Lula Cayce. W. J. Cayce was on the stand, and testified. He did not claim that either he or his wife Lula Cayce had made improvements on the property, but, whether they did so or not, they were only life tenants of

the property, and trustees to protect the remaindermen against any adverse claim. They were, therefore, not in a position to assert a claim within themselves based upon improvements made to the property. . In the case of *Trimmier v. Darden,* 61 S. C., 220; 39 S. E., 373, the rule recognized and said to be firmly established (is) that a tenant for life who puts improvements on land, is not entitled to compensation from the remaindermen. The case is much stronger where the tenant for life is not only such tenant, but is a trustee to protect the rights of the remaindermen."

(2) As to the "acre lot," he ordered it sold for partition, and that the proceeds of sale, after paying costs and expenses, be paid to the plaintiff and to the defendant, in the proportion of five-sixths and one-sixth. He added:

"This decree proceeds upon the theory that the defendant, Guignard, has in some way acquired the one-sixth interest under the will of John Bryce which did not pass to T. Hugh Meighan by the several deeds referred to in the Master's report. If he has not acquired such interest, and is not entitled thereto, he will be bound to indemnify the purchaser at such sale from any claim on account of the owner of such undivided one-sixth interest."

(3) As to the "segment," he held that Guignard was in possession of it as trustee, and was bound to make a full disclosure of the amount of land so possessed; that there was no evidence before the Court to establish where the line was which divided the strip from the other lands of Guignard. He therefore ordered Guignard to appear before the Special Referee, "and make a complete and perfect showing as to what lands are now or have been in his possession, which constituted a part of the original Bryce land lying north of the right of way of the Southern Railway Company, and that the said R. E. Carwile, Special Referee, be authorized and directed to have a survey made thereof, with a plat thereof, and that the plaintiff have leave to apply at the

foot of this decree for further orders with reference to that part of the land."

(4) That the defendant, Guignard, "acount for the rental value of the said lands occupied by him since the death of the tenant in fee defeasible, John Campbell Bryce, which occurred in the year 1915."

From this decree the defendant appealed to this Court, which, in an opinion filed May 22, 1923 (124 S. C., 443; 117 S. E., 644), affirmed the decree of his Honor, Judge Moore in all respects. Thereafter, in July, 1923, the "acre lot" was sold at public auction by the clerk of Court, and bid in by Cayce Land Company at $2,550. The company complied with its bid by paying the costs, and paying to the clerk of Court $412.62, one-sixth of the net proceeds of sale.

On October 18, 1923, the Special Referee had the strip adjoining the railroad right of way surveyed and platted, showing that the strip between the northern line of the railroad right of way and the lands of the Moseley estate and Guignard on the north contained four-tenths of an acre. After the sale and survey, it was discovered that the supposition that Guignard owned the remaining one-sixth interest in the property was a mistake; that Margaret Simons, a daughter of Campbell R. Bryce, had not been settled with, and that her children, twelve in number, had succeeded to her interest, she having died before the death of John Campbell Bryce, the tenant indefeasible.

The Cayce Land Company then purchased the interests of eleven of the twelve children of Margaret Simons, omitting to acquire the interest of Mary Tucker, the twelfth child of Margaret Simons, who had survived her mother, but who had since died intestate and childless, leaving her husband, W. H. Tucker, as one of her heirs at law.

Thinking that it had acquired the entirety of the outstanding one-sixth interest, and having already acquired the other five-sixths interests of the children of Campbell R. Bryce

and that Guignard had no interest at all in the estate, the Cayce Land Company, availing itself, as conceived, of the clause in the decree of his Honor, Judge Moore, allowing the parties to apply at the foot of his decree for any order necessary to carry the same into effect, and specifically as to the strip of four-tenths of an acre, filed a petition in the main cause setting forth that it had purchased the entire outstanding one-sixth interest; that under those circumstances it was not necesssary that a sale of the four-tenths of an acre strip be had, as the the other five-sixths interests had been acquired by it; and that an order be passed confirming the title of Cayce Land Company to the whole of the four-tenths strip.   A copy of the petition with notice of motion was served upon counsel for the defendant, to be made before his Honor, Judge Rice, at chambers, at Edgefield, on March 3, 1924, for an order granting the prayer of the petition.   A copy of the proposed order was also served upon opposing counsel, who made this statement upon the original order:   "Without consenting to this order, I hereby consent that the motion of this order be heard at chambers."   Counsel for the defendant did not appear at the hearing, and on March 3d or 4th (variously stated in the record), his Honor, Judge Rice, signed an order directing the clerk of Court to pay to Cayce Land Company the $412.62 which had been retained to be paid to the owner of the outstanding one-tenth interest, and decreed:

"That the title of the plaintiff to the lot of land on the north side of the right of way of the Southern Railway as shown upon the plat thereof made by the Tomlinson Engineering Company, and certified to by R. E. Carwile, Esq., Special Referee in said cause, and hereto attached to be recorded herewith, be and the same is hereby, ratified and confirmed, and the defendant, G. A. Guignard, is hereby adjudged to surrender possession thereof to the plaintiff."

In a subsequent proceeding, the defendant thus explained

35—S. C.—135.

his absence from the hearing of this motion before his Honor, Judge Rice:

"That the defendant Guignard, believing at that time that the plaintiff had acquired all the outstanding interests in and to said lands, and being unwilling to carry on protracted and losing litigation as to the title to the said strips of land, did not appear before Judge Rice in opposition to plaintiff's motion."

Thereafter, on April 17, 1924, the defendant, Guignard, procured a conveyance from one W. H. Tucker, the husband of Mary Tucker, a daughter of Margaret Simons, a daughter of Campbell R. Bryce, of his interest as an heir at law of his wife who had died childless; her interest as one of the twelve children of Margaret Simons not having been acquired by the Cayce Land Company when it procured conveyances from the other eleven children of their interest.

At a date not stated in the record, but between April 17, 1924, and May 20, 1924, the defendant gave notice of a motion before his Honor, Judge DeVore, at Edgefield, on May 20, 1924, for an order permitting him to serve a supplemental answer, setting up the fact that, since the decree of his Honor, Judge Moore, and the order of his Honor, Judge Rice, he had purchased an interest in the outstanding interest of one-sixth of Margaret Simons in the land in question from one W. H. Tucker, claiming that Tucker was the surviving husband of Mary, a daughter of Margaret Simons. The motion was refused by his Honor, Judge DeVore, upon the ground, as stated in his order of May 31, 1924:

"I merely decide that the defendant, Guignard, has merely succeeded to the rights of W. H. Tucker, whatever they may be, at the time of the delivery of Tucker's deed to him, and that such rights should be established in an independent action to which the defendant, Guignard, may

make all persons parties, as their respective interests may appear."

From this order the defendant appealed to this Court, which, on April 1, 1925, filed an opinion and judgment affirming the order of his Honor, Judge DeVore, and concluding thus:

"No supplemental answer can be filed in this case because the complaint has passed into judgment by the decrees of Judges Moore and Rice. If, after the decree was filed and it later was made to appear that one interested was not a party to the suit, and had an interest in the land, and Guignard purchased that interest, while we affirm Judge DeVore's order refusing to allow Guignard to file a supplemental answer, that is without prejudice to Guignard bringing a new and separate suit to litigate any rights that he may have acquired in the property subsequent to that time." 131 S. C., 296; 127 S. E., 364.

In the meantime, on June 28, 1924, the plaintiff served upon the defendant notice of its intention to apply to his Honor, Judge DeVore, at Edgefield, on July 3, 1924, for an order requiring the defendant to surrender possession of the "segment." His Honor, Judge DeVore, refused the plaintiff's motion mainly upon the ground that, since the decree of his Honor, Judge Rice, the defendant had acquired the interest of W. H. Tucker in the premises; that the defendant had surrendered all of the four-tenths of an acre strip, except the land occupied by the two spur tracks; that the defendant was in possession of the land occupied by these spur tracks, and owned, or claimed to own, the interest of W. H. Tucker therein; that each of the parties was in possession of a part of the strip, and were tenants in common of all of it; that one tenant in common could not dispossess his cotenant. He held:

"This order should not be construed as passing upon the ultimate rights of the parties, nor as adjudicating what in-

terest the defendant has in the premises under the deed executed to him by Tucker. The ultimate rights of the parties may be determined in a proper proceeding brought for that purpose."

The plaintiff did not serve notice of intention to appeal from this order within 10 days required, but on August 1, 1924, 14 days thereafter, served a notice upon the defendant's counsel "that, for the purpose of reserving the right to review the order of Honorable J. W. DeVore, Circuit Judge, heretofore filed in the above entitled cause," the plaintiff excepts to said order upon certain stated grounds.

Proceedings under the decree of his Honor, Judge Moore, dated March 16, 1922, were suspended pending the appeal from the order of his Honor, Judge DeVore, refusing leave to file a supplemental answer; and, after that appeal was decided on April 1, 1925, the plaintiff resumed hostilities. On May 19, 1925, the Special Referee made a report, as he had been directed to do under the decree of his Honor, Judge Moore, of March 16, 1922, making the following findings:

(1) That the survey required by said decree, of the lands in possession of the defendant, Guignard, which constituted a part of the original Bryce tract, lying north of the right of way of the Southern Railway Company, according to the disclosure made by Guignard as required by the decree, had been made by Tomlinson Engineering Company, and a plat of same filed with the record, showing a strip of land between the north line of the railway's right of way and lands of Guignard, containing four-tenths of an acre, across which were the spur tracks above described.

(2) That, while W. J. Cayce had title to, or was in possession of, the "acre lot," he built thereon a storehouse, containing two stories, a dwelling house containing five rooms, and a small two-room frame cabin, and a barn and stable; that these buildings were on the lot at the time of

the termination of the fee defeasible estate in John Campbell Bryce, March 15, 1915; that the rental value of the lot without the improvements would not exceed $5 per year; that the rental value of the lot with the improvements, from March 15, 1915, to July 1, 1923 (the date of the sale of the lot for partition under the decree of his Honor, Judge Moore, of March 16, 1922), with interest to January 1, 1925, was $3,203.91; that the value of the improvements by W. J. Cayce was $2,500. He declined to pass upon the contention of the defendant, Guignard, that in this accounting of the rental value of the premises he was entitled to credit for the value of the improvements which were erected on the premises by W. J. Cayce, and were upon at the time of the sale for partition in July, 1923.

(3) The other lands involved in the accounting ordered by the decree of his Honor, Judge Moore, of March 16, 1922, were: (a) The right of way of the Southern Railway, the easement being in the railway company, and the fee being originally in the children of Campbell R. Bryce, upon the termination of the fee defeasible in John Campbell Bryce; and (b) the strip of four-tenths of an acre lying between the north line of the right of way and lands of Guignard.

(a) In reference to the right of way, the Special Referee found as follows: That R. W. Cayce (R. W. G. Cayce?) on July 5, 1897, conveyed to B. B. Cayce 3½ acres, known as the right of way of the Southern Railway Company; that B. B. Cayce contracted to sell this tract to G. A. Guignard, but never executed a deed therefor; that Guignard, acting upon his contract with B. B. Cayce, erected three small houses on the tract; that in October, 1906, the Southern Railway Company brought an action against the heirs at law of B. B. Cayce and Guignard to compel the removal of said houses; that it resulted in a decree requiring a conveyance of the tract constituting the right of way to the railway company, which was executed and delivered on April 1,

1907; that in August, 1916, Cayce Land Company, successors
in title to the interests of six of the seven children of Camp-
bell R. Bryce, who held the title after the termination of
the fee defeasible in John Campbell Bryce, brought an
action against the railway company virtually for compen-
sation for the right of way, which action resulted in a
judgment of $2,558.58 in favor of the Cayce Land Company
(111 S. C., 115; 96 S. E., 725), which was paid; that, upon
the filing of the decree in that case, Guignard abandoned
his claim to all of the land which B. B. Cayce had contracted
to sell to him, except the strip of four-tenths of an acre which
he continued in possession of, and used and occupied the
houses thereon; that on June 10, 1907, Guignard entered
into a contract with the receivers of the Seaboard Air Line
Railway Company, whereby, under certain conditions, he
constructed a spur track leading from the Seaboard's track,
south of the Southern Railway's track, and crossing the
right of way of the Southern (by its permission) by an
under-pass, under the main line of the Southern, across the
strip of four-tenths of an acre, and on over lands of Guignard
to his brickyard on the north side of the Southern Railway:
that the purpose of Guignard in building this spur track and
from a clay hole on the south side of the tracks of both
Southern and Seaboard to his brickyard on the north side,
and also by which he could haul brick and other freight from
his brickyard to the Seaboard's station at Cayce; that the
cost to Guignard was $330 for the constructon of this spur
track, and that the present value of it was $6,610.

In this connection, though not so detailed in the report, it
appears that on September 21, 1909, Guignard entered into
a contract with Southern Railway Company whereby under
certain conditions, he constructed a spur track leading from
the Southern's track, over its right of way, across the strip
of four-tenths of an acre, and on over the lands of Guignard

to his brickyard on the north side of the Southern Railway. The Special Referee continues:

"The other railroad track leading from the Southern Railway Company's main line northeast across the four-tenths acre was erected by Guignard at his own expense, under license from the Southern Railway Company, in order to have a connecting line with that company, over which company's road he ships and receives large quantities of freight."

(b) In reference to the strip of four-tenths of an acre, this appears to be entirely outside of the lands of Guignard. The use of it by Guignard is sufficiently explained by what has preceded. As to it, the referee finds:

"The defendant, Guignard, has been using the two railroad tracks so erected by him across the four-tenths acre for the transportation of freight to and from his brickyard since March 15, 1915. By means of the two tracks built by Guignard under and across the right of way of the Southern Railway Company, the said railway company and the Seaboard Air Line Railway Company are enabled to receive and deliver large shipments of freight to and from the brick plant of the defendant Guignard. It appears to me that the Southern Railway Company had the right to grant to Guignard permission to build said track across its right of way, because such of its right of way is for railroad purposes."

The Special Referee further found:

"The only part of the lands delineated in the Tomlinson plat, which the defendant, Guignard, has had possession of and used since the death of John Campbell Bryce, are those portions of the four-tenths of an acre lying north of the right of way of the Southern Railway Company, as shown by the Tomlinson plat, and he is liable for the rental value thereof under the order of Judge Moore."

He finds that the rental value of the three houses on the strip is $712.69, which includes interest up to January 1, 1925, and that their value, as of July 1, 1923, is $300; that

without the houses it has no rental value. He likewise declined to pass upon the question whether the defendant is entitled to credit for the value of the improvements as against his accountability for the rental value.

In reference to the rental value of so much of the four-tenths of an acre as is actually occupied by the two spur tracks, the Special Referee overruled the contention of the plaintiff that it was entitled to the profits made, or the money saved, by Guignard on account of the operation of these spur tracks, and held that "the rental value of this strip of land (that is, we interpolate, so much of it as is actually occupied by the two spur tracks), must be established by proof of what the premises would rent for, or from evidence of other facts from which a fair rental may be determined"; and fixed the rental value at $50 per annum, amounting to $565.32, which included interest up to January 1, 1925. He further held that the underpass and the spur tracks could not be considered as a permanent improvement or that they enhanced the value of the strip of land.

On May 20, 1925, the plaintiff gave notice of a motion before his Honor, Judge DeVore, at Lexington, on May 27, 1925, "for an order directing the defendant, G. A. Guignard, immediately to surrender the possession of all of the said strip of land referred to in said affidavit to the plaintiff, and directing the Sheriff of the County of Lexington to put the plaintiff in possession of the said strip of land in its entirety, or directing the clerk of Court of Common Pleas for said County of Lexington to issue his writ of assistance to put the plaintiff in possession of the said strip of land." The affidavit referred to was an affidavit of W. H. Lyles, Esq., attorney for the Cayce Land Company, upon which the motion was made, detailing the various proceedings hereinbefore set forth. It was opposed by affidavit of J. S. Verner, Esq., attorney for Guignard, accompanied by

various exhibits which are practically a repetition of what has hereinbefore been set forth.

Thereafter counsel agreed that the exceptions to the report of the Special Referee and the application of the plaintiff for a writ of assistance should be taken up before his Honor, Judge DeVore, at his chambers at Edgefield at such time as counsel might agree upon. At a later date the matters were presented to and argued before his Honor, Judge DeVore, at some time in June, 1925. After argument, counsel were requested to furnish the Court with forms of proposed decrees, which was done. On August 31, 1925, without formally signing either proposed decree, his Honor wrote at the foot of the decree proposed by the defendant's counsel the following:

"At the hearing of the case before me at Edgefield, I was strongly inclined to grant the writ, and would have done so had it been incumbent upon me to decide the question at that time! but, after a more thorough investigation, I am satisfied that it would be wrong to oust one tenant in common and put another in possession; that is, exclusive possession. Again the record shows that W. H. Tucker, the party from whom Guignard claims, was not a party to any action of proceeding had at the time of the orders of Judges Moore and Rice in the case, and hence could not be bound by them. After those orders, Guignard bought Tucker's interest. Therefore, if Tucker was a tenant in common, Guignard is.

"For the reason stated hereinabove, it is ordered that application for the writ of assistance be, and the same is hereby, refused."

On the same sheet his Honor added the following:

"As to the exceptions to the Special Referee's report: I have not been able to find any good reason why the report of the Special Referee should be disturbed. The testimony is quite conflicting on all matters involved in the exceptions.

"It is therefore ordered that the exceptions both by plain-

tiff's and by defendant's attorneys are hereby overruled, and that the said report be and the same is made the judgment of this Court. * * * [A matter relating to the fee of the Special Referee is omitted.]"

Evidently the Circuit Judge conceived that, as there were two matters before him, the application for the writ of assistance and the exceptions to the referee's report, two orders were necessary. What he wrote might as well have been written upon the decree proposed by the plaintiff. What was intended to be done, and what was done, was to deny the application for the writ of assistance "for the reason stated above" (in his addendum, not in the body of the unsigned proposed decree), and to overrule the exceptions of both sides to the referee's report. This is manifest from the fact that the proposed decree purports to sustain the exceptions of the defendant which are specifically overruled. Nothing in the proposed decree can therefore be considered as an adjudication by his Honor, Judge DeVore.

Strictly speaking, the plaintiff, therefore, is not entitled to rely upon any of the exceptions based upon the apparent rulings of the Circuit Judge in the defendant's proposed decree. Its only grounds of exception could be to the ruling of Judge DeVore that the writ of assistance be refused; to his ruling that the exceptions of the plaintiff to the report of the referee be overruled; and to his failure to make other rulings. In view of the fact, however, that the decree of his Honor, Judge DeVore, was in a shape subject to misconstruction, and to the further fact that the defendant has interposed no objection to the form of the exceptions, we will consider the exceptions as properly amended upon motion, and as sufficient to raise the questions hereinafter discussed.

The questions fairly arising upon the record may be thus stated:

(1) Was the plaintiff under the circumstances entitled

to a writ of assistance to gain possession of the two strips of the "segment" occupied by the spur tracks?

(2) What are the respective rights and obligations of the parties with reference to the "acre lot"?

(3) What are the respective rights and obligations of the parties with reference to the "right of way"?

(4) What are the respective rights and obligations of the parties with reference to the "segment"?

As to the first question: Was the plaintiff under the circumstances entitled to a writ of assistance to gain possession of the two strips of the "segment" occupied by the spur tracks?

When the action was instituted for partition, it was supposed that the defendant, Guignard, owned the one-sixth interest of Mrs. Margaret Simons, a daughter of the testators, and one of the executory devisees, the plaintiff having acquired the other five-sixths interests. The decree of his Honor, Judge Moore, of March 16, 1922, ordering partition was specifically based upon that theory. He did not, however, leave that question open for future decision in the case, but directed that the one-sixth interest be paid to Guignard, and provided in the decree:

"If he has not acquired such interest, and is not entitled thereto, he will be bound to indemnify the purchaser at such sale from any claim on account of the owners of such undivided one-sixth interest."

The decree was a final judgment providing for the sale of the "acre lot" and a distribution of the proceeds between the plaintiff and Guignard, manifestly leaving the question of Guignard's ownership of the one-sixth interest to be determined in some other proceeding. At some time not stated in the record, but between the date of Judge Moore's the plaintiff and Guignard, manifestly leaving the question decree, March 16 1922, and the date of Judge Rice's decree March 4, 1924, the Cayce Land Company acquired the

interest of all of the heirs at law of Margaret Simons except that of W. H. Tucker, and supposing, we assume that all of the interests had been acquired, the Cayce Land Company secured from his Honor, Judge Rice, the decree of March 4, 1924, directing the clerk of Court to pay to Cayce Land Company the amount reserved for the one-sixth interest confirming the title at the Cayce Land Company to the "segment," and adjudging that Guignard surrender possession thereof to the Cayce Land Company. We do not think that the plaintiff was entitled to this decree, based upon the supposed acquisition of the outstanding interest of Mrs. Simons, after the decree of Judge Moore had been filed. The reservation in that decree of leave to apply at the·foot of the decree "for any order necessary to carry the same into effect," applied to administrative orders only; but, as the defendant had due notice of the motion, made no objection thereto, and did not appear to resist it, in fact afterwards averring that he did not intend to resist it, he must be held concluded by it.

At that time the plaintiff unquestionably was entitled to a writ of assistance to dispossess Guignard, in accordance with the decree of his Honor, Judge Rice. But, "while he slept, an enemy came." The defendant discovered that the plaintiff had not acquired the interest of W. H. Tucker, surviving husband of Mary Tucker, a daughter of Margaret Simons, and, on April 17, 1924, took a conveyance of it from him, as hereinbefore explained. Then on June 28, 1924, the plaintiff gave notice of a motion before his Honor, Judge DeVore, on July 3, 1924, for an order granting a writ of assistance to dispossess Guignard. The matter was heard by Judge DeVore who, on July 18, 1924, filed an order refusing the plaintiff's application for a writ of assistance upon the ground "that the defendant, Guignard, has made out a prima facie showing to the effect that he was in possession of the premises referred to as a

tenant in common with the plaintiff, and such being true, he cannot be dispossessed until it is established whether or not he is a tenant in common with the plaintiff and in possession of the premises as such." Judge DeVore also held that it was admitted by the defendant that the plaintiff was in possession of all of the "segment," except the strip actually occupied by the spur tracks. The plaintiff did not give notice of intention to appeal from this order, but did, fourteen days later, give notice that it would reserve the right to appeal therefrom upon certain exceptions. Conceding, which we do not, that this was sufficient notice to bring the order in review, neither the notice of appeal nor the exceptions applies to the order, but both are confirmed to the order of his Honor, Judge DeVore of August 31, 1925. We think clearly, therefore, that the plaintiff is concluded by the order of July 18, 1924, and that it is not necessary to review the order of August 31, 1925, upon a second application for the writ.

As to the second question: What are the respective rights and obligations of the parties with reference to the "acre lot"?

It will be seen from the decree of his Honor, Judge Moore, of March 16, 1922, and from the opinion of this Court in 124 S. C., 443; 117 S. E., 644, that this lot is a part of the land purchased by R. W. G. Cayce and James Cayce at the foreclosure sale in the case of *Hope v. Bryce;* that they held it under the same trusts as it had been held by Elizabeth R. Cayce, namely, for the benefit of John Campbell Bryce for life, and at his death, without issue, for the benefit of his six sisters, in whom it was vested by executory devise, upon the termination of a fee defeasible in John Campbell Bryce; that it was conveyed by R. W. G. Cayce and James Cayce to Wilie Jones; and that "the defendant (Guignard) is the successor in interest by successive conveyances, under this deed of Wilie Jones to W. J.

Cayce, and is now in possession claiming in fee simple this one-acre tract." The defendant, Guignard, acquired his interest October 2, 1899, and held the lot in possession from that time until October 15, 1915, the date of the death of John Campbell Bryce, the tenant in fee defeasible, and from that time until the sale for partition in July, 1923. Under the decree of Judge Moore, Guignard was required to account for the "rental value" of the lot, as trustee for the executory devisees, for the period of from March 15, 1915, to July 1, 1923. The referee found that W. J. Cayce, a former owner, had placed improvements upon the lot of the value of $2,500, and that the rental value, with improvements, for the period, including interest to January 1, 1925, was ·$3,203.91; and without improvements, 8½ years at $5 per year, $42.50. The defendant contended that he was entitled to offset the value of the improvements $2,500, against the rental value, with the improvements $3,203.91. The referee declined to pass upon that question, upon the ground, as he states, that Judge Moore, in his decree of March 16, 1922, had held that the defendant was not entitled "to compensation for improvements found upon the square acre at the time of the commencement of this action." The report of the referee, in reference to this matter, was confirmed by the decree of his Honor, Judge DeVore, of August 31, 1925. The defendant in his exceptions to this decree contends that the matter is not *res adjudicata* by the decree of Judge Moore, affirmed by this Court in 124 S. C., 443; 117 S. E., 644, upon the ground that the specific question was not then before the Court, and that, admittedly by the decree, the facts upon which the question could be determined were not before the Court. We appreciate the force and the justice of the defendant's contention (*Scaife v. Thomson,* 15 S. C., 337. *William v. Holmes,* 4 Rich. Eq., 475. *Annely v. De Saussure,* 26 S. C., 497; 2 S. E., 490; 4 Am. St. Rep., 725. *Sutton v. Sutton,* 26 S. C., 33; 1 S. E., 19.

*McGee v. Hall,* 28 S. C., 562; 6 S. E., 566.  *Cain v. Cain,*
53 S. C., 350; 31 S. E., 278; 69 Am. S. Rep., 863.  *Tedder
v. Tedder,* 109 S. C., 451; 96 S. E., 157, and Id., 115 S. C.,
91; 104 S. E., 318.  *Petts v. Wright,* 177 S. C., 409; 109
S. E., 649) ; but we are constrained to hold that the matter
was specifically before Judge Moore, and was decided against
the contention of the defendant.   The Special Referee in
his first report had found that the defendant was entitled
to credit for the value of the improvements, $1,250.   Upon
exceptions to his report, the Circuit Judge held:

"I also overrule the referee's conclusion that the defendant,
Guignard, is entitled to compensation for improvements
found upon the square acre of land at the time of the
commencement of this action."

It is true that he adds:

"It does not appear by whom the improvements were
put upon the property nor does it appear how much those
improvements add to the present value of the property,"
—from which it might be concluded that the difficulty in
his way was a deficiency in evidence; but he continues, as
appears at page 447 of the case as reported in 124 S. C.,
(117 S. E., 644) and holds that, where the improving holder
is a trustee, as well as a life tenant, he is not entitled to
compensation.   We are not to be understood as passing upon
this proposition one way or the other; only to hold that the
matter has been adjudicated.

The rights of the defendant in the lot as a tenant
in common, with the Cayce Land Company, under
his alleged acquisition of an undivided interest in
the property by conveyance of the interest of W. H. Tucker,
are properly to be determined in the proceeding suggested
in the opinion of this Court (131 S. C., 296; 127 S. E., 364),
and in the decree of his Honor, Judge DeVore, of August
31, 1925.  It appears that an action is now pending for that
purpose instituted since the decision in 124 S. C. (117 S.

E., 644). That interest appears to be arrived at thus: Margaret Simons was entitled to one-sixth; her husband, at her death, to one-third of one-sixth, leaving two-thirds for the twelve children; each child was entitled to one-twelfth of two-thirds of one-sixth; and the husband (W. H. Tucker) of the daughter Mary to one-half of her interest; that is to say, one-half of one-twelfth of two-thirds of one-sixth equals 1/216.

As to the third question: What are the respective rights and obligations of the parties with reference to the "right of way"?

It is manifest from the foregoing statements that the Cayce Land Company, as grantee of all of the interest of the executory devisees except one, and the heirs of Margaret Simons (with an exception hereinafter noted), have received satisfaction in full for compensation to which they were entitled for the acquisition by the railway company of its right of way.

While the Cayce Land Company has received full compensation for its interest acquired by the railway company so far as the easement of right of way is concerned, it has retained the fee-simple title in the land to the extent of its interest, 215/216. If the defendant, with the consent of the railway company, has installed an additional servitude upon the land, as a matter of course he must be held accountable to the owners of the fee therefor.

The referee found that the rental value of the three houses placed on the "segment" in question was $712.-69, which included interest up to January 1, 1925, and that their value as of July 1, 1923, was $300; that without the houses it had no rental value. He declined to pass upon the question whether the defendant was entitled to credit for the value of the improvements as against his accountability for the rental value. This part of the report was confirmed by the decree of his Honor, Judge DeVore,

of August 31, 1925. The defendant contends that he is entitled to a credit of $300, the value of the improvements placed upon the strip by him, as against his accountability for the rental value. This question was not passed upon by his Honor, Judge Moore, for, at the time of his decree, and before the disclosure by Guignard ordered by the decree, it was not known to what extent Guignard was in possession outside of the right of way. Guignard went into possession of this strip without a title other than an equitable right under his contract with B. B. Cayce, which is shown to have covered no part of the land outside of the railroad company's right of way. He, therefore, as to it was a trespasser, and not entitled to compensation for improvements. 14 R. C. L., 21; note, 62 Am. Dec., 529.

It will be seen at a glance that the spur track, under license agreement with the Southern, stands upon a different footing from that over the right of way of the Southern under license agreement with the Seaboard, although the latter was constructed by the license of the Southern.

Under the authorities there cannot be a question but that the license agreement by which the Southern permitted the spur track from its track to the brickyard to be constructed across its right of way was clearly for a legitimate railroad purpose, and a justifiable use of its right of way, not an additional servitude. *Shelton v. Sou. Cotton Oil Co.,* 106 S. C., 195; 90 S. E., 752. *Hohl v. Iowa C. Ry. Co. et al.* (1913), 162 Iowa, 66; 143 N. W., 852. 853. *Anderson v. Interstate Mfg. Co* (1911) 152 Iowa, 455; 132 N. W., 812, and cases in note 36 L. R. A., (N. S.), 513, 520. *Hartford Fire Ins. Co v. Chicago, etc., R. Co.,* 175 U. S. 99; 20 S. Ct., 33; 44 L. Ed., 84. *Gurney v. Elevator Co.* (1895), 63 Min., 70; 65 N. W., 136; 30 L. R. A., 536, 537. *Stockyards v. Keith,* 139 U. S., 128; 11 S. Ct., 461; 35 L. Ed., 75. *Cargill Co. v. Minn.,* 180 U. S., 452; 21 S. Ct., 423; 45 L. Ed., 619. *So Ry. Co. v.*

*Blunt & Ward* (C. C.), 155 F., 498, 499. See , also, *Roby v. R. Co.,* 142 N. Y., 180; 36 N. E., 1053. *R. Co. v. Bullard,* 120 Mich., 79 N. W., 635; *Detroit v. Little,* 146 Mich., 373; 109 N. W., 672.

The question, however, of the validity of the license of the Southern, by which the Southern permitted the spur track from the track of the Seaboard over its right of way by the underpass to the brickyard to be constructed by Guignard, is a much more serious one.

There appears to be no connection at the underpass or elsewhere between the Seaboard spur track and the Southern railway. The Seaboard spur track was, therefore, constructed solely for its benefit and under its authority for its railroad purposes. The Southern had no more authority to permit the use of its right of way for the benefit solely of the Seaboard than it had for the benefit solely of an independent industry which brought no revenue to it.

In 1 Lewis Em. Dom. (3d Ed.), § 221, it is said:

"A line of telegraph or telephone on a railroad right of way is an additional burden for which compensation must be made to the owner of the fee, unless the line is constructed for the use of the railroad company in the operation of its road and dispatch of its business. * * * Nor can a railroad company grant a part of its right of way to the use of another company, as against the owner of the fee."

"Where a railroad company owned only an easement, it could not license third persons to construct other lines on its right of way, and persons attempting to do so were merely trespassers." *Muncie v. Joliff,* 59 Ind. App., 349; 109 N. E., 433.

"A railroad company has no such title to its right of way as authorizes it to permit the erection thereon of a commercial telegraph line disconnected from the railroad

operation." *Tel. Co. v. Ry. Co.,* 145 Tenn., 85; 237 S. W., 64.

"But it has been held that building another railroad on a portion of the unused right of way of a company which has acquired an easement only in the land, creates an additional servitude, and the consent of the owner of the land must first be obtained and compensation made to him for the damage." 22 R. C. L., 868.

"In the case of telegraph lines upon a railroad right of way, to be used purely for commercial purposes, the fee owner is entitled to additional compensation." 22 R. C. L., 858.

It follows that the occupation by Guignard of so much of the right of way of the Southern Railway Company as was necessary to construct the spur track from the Seaboard railroad to his brickyard is an additional servitude and a trespass upon the land held in fee by the Cayce Land Company and the heirs of Mary Tucker, and that under the decree of his Honor, Judge Moore, of March 16, 1922, he is accountable to the Cayce Land Company for the rental value thereof to the extent of its interest in the fee, from the date of such occupation.

As to the fourth question: What are the respective rights and obligations of the parties with reference to the "segment"?

By reference to the Tomlinson plat, it will be seen that both the Southern and the Seaboard spur tracks have been constructed over and across the strip under discussion; the Southern spur track extending about 50 feet, and the Seaboard about 10, it is clear that as to each of them the defendant Guignard has been a trespasser since the termination of the fee defeasible in John Campbell Bryce, March 15, 1915, at least up to the time he is alleged to have acquired the interest of Tucker, April 17, 1924. Ordinarily the executory devisees or their successors in title would have

had a cause of action against Guignard for damages on account of this continued trespass, with the consequent right to require him to remove the cause of the trespass, but it appears that they preferred to hold him liable as a trustee for them, and accountable for the rental value of the portions of the strip occupied by the spur tracks. Accordingly we find that under the decree of his Honor, Judge Moore, of March 16, 1922, the defendant was required to account for "the rental value of said lands occupied by him since the death of the tenant in fee defeasible, John Campbell Bryce, which occurred in the year 1915." In obedience to this decree the Special Referee overruled the contention of the plaintiff that it was entitled to the profits made or the money saved by Guignard on account of the operation of these two spur tracks, and held that "the rental value of this strip of land (evidently meaning the two strips occupied by the spur tracks) must be established by proof of what the premises would rent for or from evidence of other facts from which a fair rental may be determined," and fixed the rental value at $50 per annum, amounting to $565.32, which included interest up to January 1, 1925. He further held that the underpass and the spur tracks could not be considered as permanent improvements or that they enhanced the value of the strip of land. This portion of the referee's report was confirmed by the decree of his Honor, Judge DeVore, of August 31, 1925. The plaintiff's contention is that Guignard was a trustee for the executory devisees and their successors in title of the strips covered by these two spur tracks laid upon the four-tenths of an acre strip; that his construction of the spur tracks across this strip must be deemed in law to have inured to the benefit of the trust estate which he held; and that, therefore, Guignard should be held responsible to the beneficiaries for what the spur tracks as a whole were worth to him; that during the period mentioned Guignard had hauled 18,321

carloads of freight over the spur tracks at a saving to him of $5 per car, which, without interest, would amount to $91,604; that the spur tracks were essential to his business as a manufacturer and shipper of brick; that this was a profit derived by Guignard, the trustee, by the withholding of the trust property from the beneficiaries, and that he should account therefor.

We think that it might as well have been contended by the Cayce Land Company, when it sued the Southern Railway Company for compensation for the right of way which it held from the grantors of the fee defeasible, that the Southern Railway Company occupied the position of trustee for the executory devisees, and was accountable for the entire profits which it had made from the earnings of its railroad as a whole. Such a proposition is shocking.

We doubt very much if Guignard, who took possession of this strip under a contract with B. B. Cayce, covering the 3½ acres of land constituting the right of way of the Southern Railway Company, the strip being outside of that right of way, can be so connected with one who held under the tenant in fee defeasible as to constitute him a trustee for the executory devisees and their successors in title. This situation had not developed when Judge Moore's decree was signed, and there is nothing to show that he meant to hold that one in possession under these circumstances was a trustee for the executory devisees. Guignard was mistaken in the extent of land covered by his contract with B. B. Cayce, and as to this strip he was a trespasser upon land which belonged, after the termination of the fee defeasible, to the executory devisees and their successors in title.

Besides, the plaintiff is concluded by the decree of his Honor, Judge Moore, of March 16, 1922, which specifically requires the defendant to account for the rental value of the portions of the land which the defend-

ant had in possession. The conclusion of the Special Referee upon this point is satisfactory to the Court.

The question as to the disposition of these two sections of the spur tracks, in the event that Guignard should be considered either as a trustee or as a trespasser, is not now before this Court.

The reporter will incorporate in the report of the case: (1) The complaint; (2) the answer; (3) the first report of the Special Referee December 6, 1921; (4) the decree of Judge Moore of March 16, 1922, need not be incorporated, as it appears in 124 S. C., 443; 117 S. E., 644; (5) the order of Judge Rice, March 4, 1924; (6) the second report of the Special Referee, May 19, 1925; (7) the order of Judge DeVore, May 31, 1924; (8) the order of Judge DeVore, July 18, 1924; (9) the decree of Judge DeVore, August 31, 1925, just as it appears in connection with the order proposed by the defendant; (10) the plaintiff's exceptions to the decree of Judge DeVore, August 31, 1925; (11) the defendant's exceptions to same; (12) a reduced reproduction of the Tomlinson plat.

The judgment of this Court is that the judgment of the Circuit Court be affirmed, except as the same is herein modified, and that the case be remanded to that Court for further proceedings as may not be inconsistent with the conclusions herein announced.

MR. CHIEF JUSTICE GARY and MESSRS. JUSTICES WATTS, BLEASE, and STABLER, concur.